No. 25-1220

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

NAUTILUS INSURANCE COMPANY

*Plaintiff – Appellant*

v.

CORY FLEMING; MOSS & KUHN, PA; CHAD WESTENDORF;
PALMETTO STATE BANK

*Defendants – Appellees*

and

UNITED STATES OF AMERICA; RICHARD ALEXANDER MURDAUGH, SR.

*Defendants*

APPEAL FROM THE U.S. DISTRCT COURT OF THE
DISTRICT OF SOUTH CAROLINA
*Charleston Division*

**BRIEF OF APPELLEE MOSS & KUHN, PA**

H. Fred Kuhn, Jr. D.S.C. Bar No. 2401
Kuhn Law Firm, LLC
1501 North Street
Post Office Drawer 507
Beaufort, SC 29901
(843)524-3373 – Telephone
(843)524-1302 – Fax
fred@fkuhnlawfirm.com
*Counsel for Appellee Moss & Kuhn, PA*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by all parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1220__     Caption: __Nautilus Insurance Company v. Cory Fleming, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Moss & Kuhn, P.A.__
(name of party/amicus)

who is ____Defendant-Appellee____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?  ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
   If yes, identify all such owners:

i

12/01/2019 SCC                          - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/H. Fred Kuhn, Jr.                    Date:    February 4, 2026

Counsel for: Moss & Kuhn, P.A.

ii

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT ........................................................................i

TABLE OF AUTHORITIES .........................................................................v

COUNTER-STATEMENT OF THE CASE .................................................1

SUMMARY OF THE ARGUMENT ...........................................................7

ARGUMENT

I.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN LIMITING DISCOVERY INTO THE PRIOR RELATIONSHIP BETWEEN PALMETTO STATE BANK AND MURDAUGH AND DID NOT ERR IN GRANTING SUMMARY JUDGMENT FOR THE BANK AND WESTENDORF. ...........................................................9

II.  THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT FOR MOSS & KUHN ON THE UNJUST ENRICHMENT CLAIM AND PROPERLY DIRECTED A VERDICT FOR MOSS & KUHN ON THE BREACH OF FIDUCIARY DUTY AND NEGLIGENCE CLAIMS. ...........................................................9

   A.   The District Court Properly Granted Summary Judgment for Moss & Kuhn on the Unjust Enrichment Claim. .........................9

   B.   The District Court Properly Directed a Verdict for Moss & Kuhn on Nautilus' Claim for Breach of a Fiduciary Duty. ........13

   C.   The District Court Properly Directed a Verdict for Moss & Kuhn on Nautilus' Direct Negligence Claim. ...........................16

III. THE DISTRICT COURT PROPERLY DENIED NAUTILUS' MOTION FOR A DIRECTED VERDICT ON THE VICARIOUS LIABILITY OF MOSS & KUHN FOR THE ACTIONS OF CORY FLEMING. ...........................................................19

IV.  THE DISTRICT COURT PROPERLY DENIED NAUTILUS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DEFENSE THAT THE SETTLEMENT WAS THE PROXIMATE CAUSE OF NAUTILUS' INJURY RATHER THAN THE DEFENDANT'S CONDUCT BECAUSE THE SETTLEMENT WAS VOID. ................................................................................ 24

CONCLUSION ............................................................................................ 26

STATEMENT REGARDING ORAL ARGUMENT ...................................... 27

CERTIFICATE OF COMPLIANCE ............................................................ 28

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                                 <u>Pages</u>

*Adams v. South Carolina Power Company,* 200 S.C. 438, 441, 21 S.E.2d
    17, 19 (1942) .................................................................................................... 19, 20

*Armstrong v. Food Lion, Inc.,* 371 S.C. 271, 276, 639 S.E.2d 50, 53 (2006)
    (citations omitted) (emphasis added) ...................................................................... 21

*Costner v. Adams,* 82 Ark. App. 148, 121 S.W.3d 164 (2003) ..................................... 22

*Crittenden v. Thompson-Walker Company,* 288 S.C. 112, 341 S.E.2d 385, 387
    (Ct. App. 1986) .................................................................................................... 22

*Dean v. City of Buffalo,* 579 F.Supp.2d 391 (Western District NY 2008) ................. 22

*Ellis v. Smith Grading and Paving, Inc.,* 366 S.E.2d 12 (S.C. Ct. App. 1988) ........ 11

*Froneberger v. Smith,* 748 S.E.2d 625, 633 (S.C. Ct.App. 2013) .............................. 20

*Hamed v. Wayne County,* 490 Mich.1, 803 N.W.2d 237, cert denied 132 S.Ct.
    1014 (2012) ......................................................................................................... 23

*Hechinger Company v. Johnson,* 761 A.2d 15 (DC 2000) .......................................... 23

*Horne v. WTVR, LLC,* 893 F.3d 201, 210 (4th Cir. 2018) (citations omitted) ............ 6

*Inglese v. Beal,* 742 S.E.2d 687, 691 (S.C. Ct. App. 2013) ........................................ 11

*Jamison v. Howard,* 271 S.C. 385, 247 S.E.2d 450, 451 (1978) ................................ 22

*Lightning Lube, Inc. v. Witco,* 4 F.3d 1153, 1166 (3d Cir. 1993) ................................ 7

*McFadden v. Anderson Motor Company,* 121 S.C. 407, 410, 114 S.E. 402, 403
    (1922)................................................................................................................... 20

*Masanz v. Premier Nissan, LLC,* 81 So.3d 169, 175 (La. Ct.App. 5th Cir. 2011), writ
    denied, 85 So.3d 91 (La. 2012) .......................................................................... 22

*Middlebrooks v. Hillcrest Foods, Inc.,* 256 F.3d 1241 (11th Cir. 2001) ..................... 23

*Mitchell v. Norman James Construction Company,* 291 Ill. App.3d 927, 684 N.E.2d 872 (First District 1997) ................................................................................ 23

*Moore v. Weinberg,* 383 S.C. 583, 588, 681 S.E.2d 875, 878 (2009) ........................ 16

*Okatie River, LLC v. Se. Site Prep, L.L.C.,* 577 S.E.2d 468, 472 (S.C. Ct. App. 2003) ................................................................................ 11

*RFT Management Company v. Tinsley & Adams, L.L.P.,* 732 S.E.2d 166, 173 (S.C. 2012) ................................................................................ 14

*Ten Broeck Dupont, Inc. v. Brooks,* 283 S.W.3d 705 (Ky. 2009) ............................... 22

*Vereen v. Liberty Life Insurance Company,* 306 S.C. 423, 412 S.E.2d 425, 429 (Ct. App. 1991) ................................................................................ 22

*Young v. FDIC,* 103 F.3d 1180 (4th Cir. 1997) ....................................................... 21, 22

Rules

Rule 50(a), FRCP................................................................................ 6

## COUNTER-STATEMENT OF THE CASE

On the morning of February 2, 2018, Gloria Satterfield drove alone to the residence belonging to Richard Alexander "Alec" Murdaugh to see Alec Murdaugh's wife, Maggie. While walking alone up the front brick steps of the house she fell. Maggie Murdaugh, who was inside the house, heard a commotion, came out the front door, and found Gloria Satterfield lying on the steps, bleeding from an open head wound. No one witnessed Gloria Satterfield's fall. Alec Murdaugh arrived on the scene soon thereafter, and claimed that Gloria Satterfield told him that his dogs had "tripped her up." Emergency Medical Services responded and provided treatment at the scene. JA4088, JA4593, JA2902.

According to the nurse who accompanied Gloria Satterfield on her transport to the hospital, Gloria Satterfield had normal speech without slurring, and a normal motor, sensory, and reflex examination. In the emergency room she told the doctor that she did not know what caused her to fall. According to the notes of Nautilus' investigator: "Neurologically, there was nothing about (Gloria Satterfield's) condition which would have prevented her from informing (the doctor) of the basis for her fall if, in fact, she knew what caused her to fall." JA4267.

Gloria Satterfield tragically succumbed to her injuries and passed away on February 26, 2018. JA4593.

1

Murdaugh asked Attorney Cory Fleming to bring a claim against him on behalf of the Estate of Gloria Satterfield to collect on Murdaugh's insurance, consisting of a primary liability policy of $505,000.00 issued by Lloyds of London and a $5,000,000.00 excess umbrella policy issued by Nautilus. JA2902, JA4636-4637, JA4810, JA2902. Fleming and Murdaugh had known each other "forever," and had been friends "for a very long time." JA4769. At that time, Fleming was associated with the law firm Moss, Kuhn & Fleming.[1]

On or about November 12, 2018 Lloyds tendered its policy limits. JA4115-4117, JA4631-4632, JA4640-4641, JA4654, JA4815.

With Lloyds tendering its limits, Nautilus' coverage was then triggered and Nautilus assumed the defense of Murdaugh and retained Attorney John Grantland to defend Murdaugh. JA4815-4816.

Nautilus then began its own investigation into the claim and at least three (3) of Nautilus' in-house attorneys came to realize that Murdaugh's claim that Satterfield told him that his dogs caused her to trip was fraudulent. The first of these attorneys was Amy Miller who was employed as a Senior Litigation Specialist for Nautilus, meaning that she dealt with potentially high exposure claims. She had worked in the insurance industry for 38 years, including 12 years as an insurance defense

---

[1]The firm went from Moss, Kuhn & Fleming to Moss & Kuhn when Fleming was disbarred. Moss & Kuhn is no longer operating, inasmuch as Jim Moss retired and Fred Kuhn went out into sole practice as the Kuhn Law Firm. Moss & Kuhn and Kuhn Law Firm are two (2) separate and distinct law firms. JA4938-4939. For simplicity, and for the purposes of this appeal, this Appellee will refer to Fleming's law firm as "Moss & Kuhn" throughout.

2

attorney. JA4802-4803. She realized that the "facts of the case are questionable." JA4331. No one witnessed the fall and Murdaugh's claim that Satterfield told him the dogs caused her to trip was directly contradicted by her statement to her doctor at the hospital while she was completely lucid, that she did not know what caused her to fall. JA4299, JA4304-4306. She did not mention dogs to the EMTs who treated her at the scene, nor to the nurse who accompanied her on her transport to the hospital. E.g., JA4264-4267. Attorney Miller, accordingly, had doubts about the "dog story." JA4824. She knew that Fleming and Murdaugh were "speaking frequently" with each other about the case which she felt was not only "odd" but knew as "inappropriate" and "wrong." JA4837. She described it as the "craziest experience" in her life. JA4839.

The frontline attorney hired by Nautilus to defend Murdaugh was John Grantland, whom Nautilus considered to be a "very qualified attorney." JA4816. Going into mediation Grantland told Nautilus point blank that he "smelled a trap." JA4829, Plaintiff's Exhibit 21. Prior to mediation he had even received joint calls from Fleming and Murdaugh, both of them pushing for an expedited mediation. JA4826-4827, JA4136, JA2930-2932.

The most telling evidence of Nautilus' knowledge of fraud was the explicit declaration by Katherine Karam, Nautilus' coverage counsel for the case, who stated

3

that it was the "worst case of insurance fraud and injustice" she had ever seen. JA4840.

Notwithstanding the fact that three (3) of Nautilus' attorneys either knew, or had reason to know, that Murdaugh's claim was fraudulent, Nautilus entered into mediation and as a result agreed to settle the claim for $3.8 million dollars. The Mediation Agreement was reduced to writing and signed by all parties. Plaintiff's Exhibit 23, JA4142.    The Mediation Agreement provides in pertinent part as follows:

> "Funds will be delivered within thirty (30) days of receipt by Nautilus Insurance Company of funding instructions. Funds will be held in trust until the settlement is approved by a Court."

JA4142. The Mediation Agreement also provides that the Petition to Approve the Settlement, as well as the Order Approving the Settlement shall not have an adversarial caption. JA4142. This was a condition of settlement that was requested by Nautilus, at the behest of Murdaugh. A fatal boating accident had recently occurred involving Murdaugh's teenage son who was driving Murdaugh's boat. As a result of the accident, one of the teenagers was thrown from the boat and drowned. All the teenagers aboard the boat, including Murdaugh's son, were intoxicated. There was a possibility that criminal charges could be brought. JA4269. As a result, Murdaugh, as well Nautilus, were adamant that there be no publicity regarding the settlement. JA4774.

4

For the same reason that Nautilus, at Murdaugh's request, did not want an adversarial caption on approval Order, the Mediation Agreement does not contain any provision requiring that the settlement funds be held until after the Order approving the settlement is <u>filed</u>. As noted above, the funds only had to be held until the settlement was <u>approved</u>. The lack of a filing requirement was for the same reason as for the absence of an adversarial caption. Nautilus, again at Murdaugh's request, did not want the Order filed in order to avoid publicity. It was never agreed that the settlement funds would be held in escrow until after the approval Order was filed. JA4778. A specific conversation was held between Fleming and Grantland that Grantland would be the one responsible for filing the Order. JA4775. Fleming was expressly told <u>not</u> to file the Order. JA4708. The agreement was that after the settlement was approved, the original Order would be given to Grantland who would then hold the Order and could file it once everything had "calmed down." JA4736, JA4708.

A hearing on the Petition to approve the settlement was held before the Honorable Carmen Mullen and as a result an Order approving the settlement was signed and executed. Plaintiff's Exhibit 32, JA4158, JA4709. In accordance with their agreement, Fleming mailed the original Order to Grantland so that Grantland could file it when he deemed it appropriate. JA4676, JA4708, JA4881. Grantland's office subsequently acknowledged the fact that Fleming had mailed to it the original

signed Order approving the settlement. Grantland's office even emailed Judge Mullen's Clerk, asking for instructions as to how it should be recorded. Judge Mullen's office responded with instructions on how to record the original signed Order. For some unknown reason, John Grantland's office failed to file the original signed Order. JA4882.

## **DIRECTED VERDICT STANDARD**

The Fourth Circuit reviews the grant of a Rule 50(a), FRCP, Motion for Directed Verdict *de novo*. "In considering a motion for a directed verdict, the Court must construe the evidence in the light most favorable to the party against whom the motion is made." "Unless there is substantial evidence to support the verdict asked of the jury, the reviewing Court must direct the verdict upon request. As a consequence, the case should be withdrawn from the jury when any verdict in favor of the nonmoving party necessarily will be premised upon speculation and conjecture." *Horne v. WTVR, LLC*, 893 F.3d 201, 210 (4th Cir. 2018) (citations omitted). See also Rule 50, Federal Rules of Civil Procedure.

In determining whether the evidence is sufficient to sustain liability, the Court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. Although judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability. The question is not whether there is literally no evidence supporting the

party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party. *Lightning Lube, Inc. v. Witco,* 4 F.3d 1153, 1166 (3d Cir. 1993).

## SUMMARY OF THE ARGUMENT

The District Court properly granted summary judgment for Moss & Kuhn on the unjust enrichment claim. Nautilus never conferred a non-gratuitous benefit on Moss & Kuhn, the settlement funds never belonged to Moss & Kuhn, Nautilus never paid any money to Moss & Kuhn, and Moss & Kuhn did not retain one penny of the settlement funds, not even the attorney's fees paid to it by the Satterfield Estate.

Moss & Kuhn did not owe a fiduciary duty to Nautilus, much less breach one. Moss & Kuhn fully complied with the express terms of the written settlement agreement that the settlement funds would be held in trust until the settlement was approved by a Court. In order to avoid additional adverse publicity arising as a result of the involvement of its insured's son in a fatal boating accident, Nautilus insisted that filing of the Order approving the settlement be delayed and that Nautilus be the one to control when the Order would be filed. Nautilus is the one who held, and refused to file, the original Order approving the settlement. The status of the Order, whether filed or unfiled, was not the proximate cause of any damages claimed by Nautilus.

7

Nautilus failed to introduce any expert testimony in support of its claim of professional negligence. Nautilus did not introduce any evidence regarding what duty a law firm owes to supervise its attorneys, how these duties are satisfied, what constitutes a breach of these duties, or what constitutes due care regarding such supervision. Likewise, Nautilus failed to introduce any competent evidence regarding the standard of care regarding a law firm's obligation to monitor its trust account. None of the foregoing is within the purview of the ordinary lay person. With respect to supervising its attorneys and monitoring its trust account, Moss & Kuhn had procedures in place to ensure that all of its lawyers conformed with the Rules of Professional Conduct, this included each attorney independently reviewing its trust account, as well as the hiring of an independent outside accountant who had extensive experience handling law firm's trust accounts. Nautilus failed to introduce any expert testimony in support of its claim of professional negligence.

The District Court properly submitted the issue of vicarious liability to the jury. There is extensive evidence that the criminal conduct engaged in by Fleming was not reasonably necessary to accomplish the purpose of his employment, was not in furtherance of Moss & Kuhn's business, and that he was acting to accomplish, and was predominantly motivated by, an independent purpose of his own, to wit, stealing the settlement proceeds for his own personal benefit.

8

The District Court properly submitted the issue of what constituted the proximate cause of Nautilus' injury to the jury and the jury properly found that the proximate cause of Nautilus' injury was the conduct of Fleming and Murdaugh.

## ARGUMENT

**I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN LIMITING DISCOVERY INTO THE PRIOR RELATIONSHIP BETWEEN PALMETTO STATE BANK AND MURDAUGH AND DID NOT ERR IN GRANTING SUMMARY JUDGMENT FOR THE BANK AND WESTENDORF.**

The Appellee Moss & Kuhn, P.A. makes no argument regarding this issue.

**II. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT FOR MOSS & KUHN ON THE UNJUST ENRICHMENT CLAIM AND PROPERLY DIRECTED A VERDICT FOR MOSS & KUHN ON THE BREACH OF FIDUCIARY DUTY AND NEGLIGENCE CLAIMS.**

### A. The District Court Properly Granted Summary Judgment for Moss & Kuhn on the Unjust Enrichment Claim.

Nautilus argues that the District Court erred in granting summary judgment for Moss & Kuhn on Nautilus' unjust enrichment claim because the District Court found, among other things, that Nautilus had no "expectation of payment" from any Defendant. Appellant's Brief, pp. 38-39. Nautilus argues that an "expectation of payment" is an element of a quantum meruit claim, and its claim was for unjust enrichment, and therefore the Court erred. *Id.* This argument makes no sense. Simply because Nautilus did not have an expectation of payment, does not mean that there was evidence that Moss & Kuhn was unjustly enriched. To the contrary, the

9

fact that Nautilus had no expectation of payment tends to make it more likely that Moss & Kuhn was not unjustly enriched.

Nautilus did not file a brief in opposition to Moss & Kuhn's Motion for Summary Judgment on Nautilus' unjust enrichment claim against it. This, alone, justified the District Court in granting the summary judgment motion. Nautilus did, however, file a Memorandum in Opposition to Palmetto State Bank's and Chad Westendorf's Motion for Summary Judgment as to the unjust enrichment claim made by Nautilus against them. In its Memorandum in Opposition to their summary judgment motion Nautilus appeared to equate, or at the very least relate, quantum meruit to unjust enrichment, stating:

> "An action for money had and received is based upon a quasi-contract or a contract implied law." *Id.* The South Carolina Supreme Court has further explained that "quantum meruit, quasicontract, and implied by law contract are equivalent terms for an equitable remedy." (omitted). The test for these claims required a showing of: "(1) a benefit conferred by plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value."

JA3446-3447 (citations omitted).

Since Nautilus raised the issue of quantum meruit on the same claim against the Co-Defendants, the District Court was simply noting that Nautilus had neither a

10

viable unjust enrichment nor a viable quantum meruit claim. Nautilus, of course, now concedes that it has no viable quantum meruit claim.

In any event, the District Court in granting summary judgment in favor of Moss & Kuhn on the unjust enrichment cause of action, applied the correct law. As the District Court noted, "An action for money had and received exists where a Defendant has money belonging to the Plaintiff which in equity should be repaid to the Plaintiff." JA3756, quoting *Okatie River, LLC v. Se. Site Prep, L.L.C.*, 577 S.E.2d 468, 472 (S.C. Ct. App. 2003). The District Court correctly recited the essential elements of an action for unjust enrichment, as follows: "To recover restitution in the context of unjust enrichment, the Plaintiff must show: (1) he conferred a non-gratuitous benefit on the Defendant; (2) the Defendant realized some value from the benefit; and (3) it would be inequitable for the Defendant to retain the benefit without paying the Plaintiff for its value." JA3756, quoting *Inglese v. Beal*, 742 S.E.2d 687, 691 (S.C. Ct. App. 2013). The District Court continued noting that "[R]estitution is a mechanism by which balance is restored between the parties. It is the return of the benefit from the beneficiary to the benefactor . . . thus, any "imbalance" between the parties that does not result in a windfall to the Defendant will not be remedied by use of restitution." JA756, citing *Ellis v. Smith Grading and Paving, Inc.*, 366 S.E.2d 12 (S.C. Ct. App. 1988). None of the aforesaid essential elements exist in this case.

11

First, Nautilus never conferred a "non-gratuitous benefit" on Moss & Kuhn. The settlement funds never belonged to Moss & Kuhn. Although Moss & Kuhn's name was on the check, the funds belonged to the Satterfield Estate. This is why the funds were placed in Moss & Kuhn's trust account, where they were held in trust for the benefit of the Satterfield Estate pending approval of the settlement and execution of the Release. Nautilus never sent any money to Moss & Kuhn that belonged to Moss & Kuhn. The "benefit," i.e., the money, was conferred upon the Satterfield Estate.

Secondly, Moss & Kuhn never realized any value from any "benefit" bestowed upon it by Nautilus. Although Moss & Kuhn received some attorney's fees, these were paid by the Satterfield Estate, not by Nautilus. Nautilus did not pay Moss & Kuhn a penny.

Finally, Moss & Kuhn did not retain the "benefit." By the time Nautilus filed its Amended Complaint every penny of the settlement funds, including the attorney's fees, had been sent to the Satterfield Estate. It is respectfully submitted that what Nautilus now seeks would be inequitable, that is, for Moss & Kuhn to pay to Nautilus money that it did not retain and no longer has.

Nautilus now makes a big deal out of the fact that the Order Approving the Settlement was never filed. Whether the Order was filed or not, the fact is that the settlement was approved and a proper release was given to Nautlius. In other words,

12

Nautilus received exactly that for which it paid the settlement funds. More significantly, the original Order was sent by Cory Fleming after it was fully executed by Judge Mullen to John Grantland, Nautilus' attorney, to be filed. Nautilus has never explained why it failed to file the Order. Nautilus should not now be allowed to complain about the Order not being filed when Nautilus is the one solely responsible for preventing the filing of the Order.[2]

As Nautilus admits in its brief, Nautilus' only "expectation" was "the expectation that, should this settlement not be approved and/or the Order not filed as required by law, the funds would be returned to Nautilus." Appellant's Brief, pg. 39. As previously noted, the settlement was approved and Nautilus is the one who failed to file the Order.

Even though Nautilus failed to file anything in opposition to Moss & Kuhn's Motion for Summary Judgment on the unjust enrichment cause of action, the District Court carefully considered the merits of the motion and properly decided that summary judgment was appropriate. Nautilus never conferred a non-gratuitous benefit on Moss & Kuhn, the money never belonged to Moss & Kuhn, Moss & Kuhn was never paid any "value" by Nautilus, and Moss & Kuhn did not retain one penny of the settlement funds.

**B.     The District Court Properly Directed a Verdict for Moss & Kuhn on Nautilus' Claim for Breach of a Fiduciary Duty.**

---

[2] *"Nullus commodum capere potest de injuria sua propria"*—*no one may take advantage of his own wrong.*

13

In its fourth cause of action Nautilus alleges that Moss & Kuhn owed it a fiduciary duty not to disburse the settlement funds until the Order approving the settlement had been filed. Nautilus alleges that this fiduciary duty was created by a letter which accompanied the settlement check stating that the funds should not be disbursed until an Order approving the settlement had been filed. JA1338 (¶43). Nautilus alleges that Moss & Kuhn's breach of its duty to file the settlement approval Order somehow prevented Nautilus from discovering the fraud perpetrated against it, thereby proximately causing Nautilus to suffer harm. *Id.,* ¶47.

"To establish a claim for breach of fiduciary duty, the Plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the Plaintiff by the Defendant; and (3) damages proximately resulting from the wrongful conduct of the Defendant." *RFT Management Company v. Tinsley & Adams, L.L.P.,* 732 S.E.2d 166, 173 (S.C. 2012).

When Nautilus' attorney John Grantland mailed the settlement proceeds check to Cory Fleming his cover letter included the following request:

> "Please hold these settlement funds in trust until a Petition and Order approving settlement have been signed and filed at the Probate Court[3] settlement hearing."

---

[3] The parties later agreed to have the settlement approved by the Common Pleas Court.

14

JA1084. This request by Mr. Grantland, that disbursement not take place until after the Order Approving Settlement was actually filed, was not one of the terms of the settlement agreement between the parties. The settlement agreement, which was carefully negotiated between the parties and their attorneys and reduced to writing, signed by counsel for both parties, expressly omits any reference to the filing of the Order Approving Settlement. The settlement agreement simply recites the following:

> "Funds will be delivered within thirty (30) days of receipt by Nautilus Insurance Company of funding instructions. **Funds will be held in trust until the settlement is approved by a Court.**"

JA3386 (emphasis added). Accordingly, the only duty owed by Moss & Kuhn to Nautilus, whether it be a fiduciary or nonfiduciary duty, accordingly, was to hold the funds in trust until the settlement was approved by a Court. This it did.

A request by one party to change the terms of a settlement agreement does not create a duty upon the opposing party to comply with that request.

Additionally, the only reason the Order was not filed is because Nautilus did not do it. Nautilus' counsel, John Grantland, was given the original Order. At her request, John Grantland's paralegal was given instructions on how to file the Order. As previously noted, Nautilus should not now be heard to complain about the Order not being filed when the only reason the Order was not filed is because Nautilus did not do it.

15

Finally, the fact that the Order Approving Settlement was not filed was not the proximate cause of any damages suffered by Nautilus. Alex Murdaugh's fraudulent scheme was not dependent upon the Order being filed. Nautilus introduced no evidence to establish that if it had filed the Order it would somehow have been miraculously discovered that Alex Murdaugh was lying about his dogs causing Mrs. Satterfield's tragic death. This is because no such evidence exists.

Moss & Kuhn complied with its duty to hold the settlement funds in trust until the settlement was approved by a Court. Although there was an after-the-fact request by Nautilus that the funds be held until the settlement Order was filed, this request was never part of the parties' agreement. Even so, Nautilus is the one who failed to file the Order and Nautilus' failure to file the Order was not the proximate cause of its damages. The District Court accordingly correctly granted Moss & Kuhn's Motion for a Directed Verdict as to the breach of fiduciary duty cause of action.

### C.    The District Court Properly Directed a Verdict for Moss & Kuhn on Nautilus' Direct Negligence Claim.

"In a negligence action, a Plaintiff must show (1) the Defendant owed a duty of care to the Plaintiff, (2) the Defendant breached the duty by a negligent act or omission, (3) the Defendant's breach was an actual and proximate cause of the Plaintiff's injury, and (4) the Plaintiff suffered an injury or damages." *Moore v. Weinberg*, 383 S.C. 583, 588, 681 S.E.2d 875, 878 (2009).

16

Nautilus advances three (3) theories of negligence against Moss & Kuhn: (1) by accepting the settlement funds into its trust account, it assumed a duty as an escrow agent to follow the condition on the escrow funds, (2) it negligently supervised Fleming, and (3) it negligently monitored its trust account by allowing Fleming to fabricate expenses and divert the settlement funds from the account to Murdaugh. Appellant's Brief, pg. 46.

As to the first theory of negligence, Moss & Kuhn complied fully with the terms of the settlement agreement by holding the settlement funds in trust until the settlement was approved by a Court. As previously noted: (1) there was never an agreement that the funds would be held in trust until after the Order was filed; (2) Nautilus is the one who failed to file the Order; and (3) the status of the Order, whether filed or unfiled, was not the proximate cause of any damages claimed by Nautilus.

As to the second theory of negligence, there was zero evidence that Moss & Kuhn negligently supervised Fleming. Nautilus did not proffer any evidence as to the duty, if any, of a law firm to supervise its partners. This claim is essentially one of professional negligence, and Nautilus did not call any expert witnesses. No witness was proffered as an expert witness on this topic. What duties a law firm owes to supervise its attorneys, how these duties are satisfied, what constitutes a breach of these duties, what constitutes due care regarding such supervision and

17

what constitutes a breach or lack of due care regarding such supervision, is not something that is within the purview of the ordinary lay person.

Nautilus' third theory of negligence, i.e., that Moss & Kuhn negligently monitored its trust account, fails for the same reason. There was no expert testimony introduced by Nautilus establishing the standard of care regarding a law firm's obligation to monitor its trust account or that Moss & Kuhn breached this trust account.

Additionally, the evidence established that Moss & Kuhn hired an independent outside accountant to handle its trust account. This accountant had over 30 years experience, including working for other law firms. This accountant was "in charge of reconciling the books, getting the bank statements, collecting the checks, getting all that kind of stuff, making sure the trust account is balanced, that the bank statements come in, that our (Moss & Kuhn's) records jive with the bank records, that the beginning balance and the outs and the ins come out with the ending balance, that everything balances out." JA4939. In addition, each attorney independently reviews the trust account with the primary focus on that attorney's cases. *Id.* Moss & Kuhn had procedures in place to ensure that all the lawyers in the firm conformed with the Rules of Professional Conduct. JA4940. In summary, the evidence was that Moss & Kuhn did "the same things every other law firm does." *Id.*

18

All three theories of negligence also fail regarding the proximate cause element of a negligence claim. As previously noted, the status of the Order Approving Settlement as filed or unfiled was not the proximate cause of any damages suffered by Nautilus. Likewise, even if Moss & Kuhn had discovered that Fleming was stealing money from the trust account, those funds belonged to the Satterfield Estate, and the Satterfield Estate was the victim. Fleming stealing money from the Satterfield Estate does not necessarily or reasonably lead to the conclusion that Alex Murdaugh was lying when he said his dogs tripped Mrs. Satterfield and caused her death.

Accordingly, the District Court did not err in granting a directed verdict in favor of Moss & Kuhn on Nautilus' claim of direct negligence.

## III. THE DISTRICT COURT PROPERLY DENIED NAUTILUS' MOTION FOR A DIRECTED VERDICT ON THE VICARIOUS LIABILITY OF MOSS & KUHN FOR THE ACTIONS OF CORY FLEMING.

"Under the doctrine of respondeat superior, it is generally held that the master is liable for the wrongful acts of his servant while acting as such within the scope of his employment. The principle is adhered to that an act is within the scope of the servant's employment where reasonably necessary to accomplish the purpose of his employment and is in furtherance of the master's business." *Adams v. South Carolina Power Company,* 200 S.C. 438, 441, 21 S.E.2d 17, 19 (1942).

19

Nautilus claims that Fleming and Murdaugh conspired together to commit fraud by concocting a lie about Murdaugh's dogs causing the fall of Gloria Satterfield, then collaborated together in the prosecution of the claim against Murdaugh, with the goal of pressuring Murdaugh's insurance carriers, Lloyds and Nautilus, into paying settlement funds that they could then steal for their own purpose. The jury agreed, finding against Fleming on the causes of action for Conspiracy to Commit Fraud and Unfair Trade Practice.

"The Modern Doctrine of Respondeat Superior makes a master liable to a third party for injuries caused by the tort of his servant committed within the scope of the servant's employment." *Froneberger v. Smith*, 748 S.E.2d 625, 633 (S.C. Ct.App. 2013). "An act is within the scope of a servant's employment where reasonably necessary to accomplish the purpose of his employment and is in furtherance of the master's business." *Adams v. South Carolina Power Company*, 200 S.C. 438, 21 S.E.2d 17, 19 (1942). Fleming's theft of the insurance proceeds was not necessary to accomplish the purpose of his employment. Likewise, his thievery did not further the business of Moss & Kuhn.

If the servant "is upon his own business acting outside of his employment the master is not liable." *McFadden v. Anderson Motor Company*, 121 S.C. 407, 410, 114 S.E. 402, 403 (1922). In conspiring to steal these funds for his own personal profit Fleming was acting upon his own business.

20

"The act of a servant done to effect some **independent purpose of his own** and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is not within the scope of his employment so as to render the master liable therefore. Under these circumstances the servant alone is liable for the injuries inflicted. If a servant steps aside from the master's business for some purpose wholly disconnected with his employment, the relation of master and servant is temporarily suspended; this is so no matter how short the time, and the master is not liable for his acts during such time. *Armstrong v. Food Lion, Inc.,* 371 S.C. 271, 276, 639 S.E.2d 50, 53 (2006) (citations omitted) (emphasis added). In this case, Fleming was acting to effect some independent purpose of his own, i.e., fabricating a lawsuit so he could steal the proceeds for his own personal benefit.

The facts in *Young v. FDIC*, 103 F.3d 1180 (4th Cir. 1997) are analogous to those in the case *sub judice*, although it involves a financial institution instead of a law firm. In *Young v. FDIC* a bank employee conspired to defraud a bank customer pursuant to a scheme which would not have been possible but for his status as a bank employee. The defrauded customer sought to hold the bank vicariously responsible for its employee's fraud. The Fourth Circuit Court of Appeals affirmed the District Court's grant of summary judgment to the bank, stating that "an act falls within the scope of employment only if the employee acted with purpose of benefiting the employer. If the employee acted for some independent purpose of his own, the

21

conduct falls outside the scope of his employment." *Id.,* 103 F.3d at 1190. Citing *Jamison v. Howard,* 271 S.C. 385, 247 S.E.2d 450, 451 (1978); and *Vereen v. Liberty Life Insurance Company,* 306 S.C. 423, 412 S.E.2d 425, 429 (Ct. App. 1991); and *Crittenden v. Thompson-Walker Company,* 288 S.C. 112, 341 S.E.2d 385, 387 (Ct. App. 1986). The Court Appeals accordingly concluded that since the banker "acted to further his conspiracy with (his co-conspirators) and to benefit his own independent purpose of defrauding (the Plaintiff)" then summary judgment in favor of the bank on the issue of vicarious liability was appropriate. *Id.,* 103 F.3d at 1190. Likewise, in this case Fleming was acting solely to further his conspiracy with Murdaugh, and to benefit his own independent purpose of defrauding Nautilus, solely for his own benefit, not for the benefit of his employer.

Stated somewhat differently, "a finding of scope of employment hinges on the predominant motive of the tortfeasing employee." *Masanz v. Premier Nissan, LLC,* 81 So.3d 169, 175 (La. Ct.App. 5th Cir. 2011), writ denied, 85 So.3d 91 (La. 2012). Fleming's "predominant motive" was enriching himself.

For purposes of holding an employer liable under *respondeat superior* for an employee's intentional tort, the scope of employment does not include acts that are based on strictly personal motives. See, e.g., *Costner v. Adams,* 82 Ark. App. 148, 121 S.W.3d 164 (2003); *Ten Broeck Dupont, Inc. v. Brooks,* 283 S.W.3d 705 (Ky. 2009); *Dean v. City of Buffalo,* 579 F.Supp.2d 391 (Western District NY 2008).

22

Stated otherwise, an employer will not be held responsible where an employee's actions are done only to further his or her own interest. See, e.g., *Hechinger Company v. Johnson,* 761 A.2d 15 (DC 2000); *Mitchell v. Norman James Construction Company,* 291 Ill. App.3d 927, 684 N.E.2d 872 (First District 1997); *Hamed v. Wayne County,* 490 Mich.1, 803 N.W.2d 237, cert denied 132 S.Ct. 1014 (2012).

Accordingly, whether an employee was acting within the scope of his employment at the time that the intentional tort was committed ordinarily is a question of fact. *Middlebrooks v. Hillcrest Foods, Inc.,* 256 F.3d 1241 (11th Cir. 2001).

Fleming himself testified that his doing something illegal was neither reasonably necessary to accomplish the purpose of his employment, nor would it be in furtherance of the business of Moss & Kuhn, but rather would be in furtherance of his own independent purpose. JA4780.

Not only was there evidence from which a jury could reasonably conclude that Fleming was not acting in the scope of his employment conspiring to defraud Nautilus and steal the settlement proceeds, but there was evidence that Nautilus knew, or at least should have known, about the fraud. Amy Miller, an experienced insurance defense attorney and Nautilus' senior litigation specialist assigned to the claim, admitted she had "doubts" about the "dog story," and felt that the whole thing

23

was "odd." JA4840, JA4824, JA4837. Both she and John Grantland, Nautilus' defense attorney, knew that Fleming and Murdaugh were speaking frequently. JA4837. Most telling is the admission of Katherine Karam, Nautilus' coverage counsel assigned to the case, who described it as the "worst case of insurance fraud and injustice" she had ever seen. JA4840. Significantly, Nautilus did not call Katherine Karam as a witness.

The jury was properly charged on the law of vicarious liability. It sat through days of testimony and carefully weighed the evidence, as well as the credibility of the witnesses. Applying the law on which it was instructed to the facts based upon the evidence that was presented to it, the jury concluded that Nautilus had not proven that Moss & Kuhn was vicariously responsible for Fleming's fraudulent theft. The District Court, accordingly, properly refused to direct a verdict on the issue of vicarious liability in favor of Nautilus.

## IV. THE DISTRICT COURT PROPERLY DENIED NAUTILUS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DEFENSE THAT THE SETTLEMENT WAS THE PROXIMATE CAUSE OF NAUTILUS' INJURY RATHER THAN THE DEFENDANT'S CONDUCT BECAUSE THE SETTLEMENT WAS VOID.

Nautilus sought partial summary judgment as to whether the settlement was the proximate cause of its injury rather than the Defendant's conduct. Nautilus now argues that the District Court erred in denying this motion.

24

Quite frankly, Nautilus' reasoning and argument on this point is difficult to comprehend. Obviously, the jury concluded that Fleming's conduct was the proximate cause of Nautilus' injury. Otherwise, it would not have rendered a verdict in favor of Nautilus against Fleming. Whether the settlement entered into between Murdaugh and the Satterfield Estate was void or voidable, whether it was valid or invalid, is of no consequence. Nautilus' injuries were not the proximate result of some alleged defect in the settlement, but rather were the proximate result of the fact that the entire lawsuit was fraudulent. Nautilus was damaged because Murdaugh and Fleming made up the case about the dogs injuring Gloria Satterfield, and thereafter jointly pursued the claim against Nautilus, inducing Nautilus to settle so they could steal the settlement funds.

Nautilus argues that "because the approval Order was never filed, the settlement was a nullity and was not the proximate cause of Nautilus' injury as a matter of law." As previously noted, the failure to file the approval Order was Nautilus' own fault. For Nautilus to argue that the settlement was not the proximate cause of its injury is facetious at best. The conduct of Fleming and Murdaugh was the proximate cause of Nautilus' injury, and that conduct included fraudulently inducing Nautilus to pay money to settle the claim.

Nautilus argues that the jury' award of $1.25 million dollars, which is less than the $3.8 million dollar settlement, shows that this was somehow harmful error.

25

Appellant's Brief, pg. 52. This makes no sense. There is no rational relationship between the amount of damages suffered by Nautilus and the status of the settlement Order as filed or unfiled. If Nautilus had felt the verdict was inadequate, it could have moved for an additur, which it did not.

The District Court accordingly correctly denied summary judgment on this issue and properly submitted the issue of proximate cause to the jury.

## CONCLUSION

For the reasons set forth hereinabove it is respectfully requested that the rulings of the District Court Judge and the verdict of the jury be affirmed.

Respectfully submitted,

/s/H. Fred Kuhn, Jr.
H. Fred Kuhn, Jr. D.S.C. Bar No. 2401
fred@fkuhnlawfirm.com
1501 North Street
Post Office Drawer 507
Beaufort, SC 29901
Tel: 843-524-3373
Fax:843-524-1302

*Counsel for Appellee*
*Moss & Kuhn, PA*

26

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Moss & Kuhn respectfully requests oral argument. It is respectfully submitted that oral argument would materially assist the Court in resolving this appeal because it presents important issues of fact and law concerning, among other things, vicarious liability for criminal conduct. It is believed that oral argument would significantly aid the decisional process.

Respectfully submitted,

/s/H. Fred Kuhn, Jr.
H. Fred Kuhn, Jr. D.S.C. Bar No. 2401
fred@fkuhnlawfirm.com
1501 North Street
Post Office Drawer 507
Beaufort, SC 29901
Tel: 843-524-3373
Fax:843-524-1302

*Counsel for Appellee*
*Moss & Kuhn, PA*

27

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.     This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments): This brief contains 6,192 words.

2.     This brief complies with the type face requirements because: This brief has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Times New Roman.

/s/H. Fred Kuhn, Jr.

Party Name:  Moss & Kuhn, P.A.

28