**No. 25-1220**

---

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

NAUTILUS INSURANCE COMPANY,

*Plaintiff- Appellant*

v.

CORY FLEMING; MOSS & KUHN, P.A.;
CHAD WESTENDORF; PALMETTO STATE BANK,

*Defendants – Appellees*

---

APPEAL FROM THE U.S. DISTRICT COURT FOR
THE DISTRICT OF SOUTH CAROLINA
*Charleston Division*

---

**RESPONSE BRIEF OF DEFENDANT-APPELLEES
PALMETTO STATE BANK and CHAD WESTENDORF**

---

Thomas P. Gressette, Jr. (Fed ID# 7261)
G. Trenholm Walker (Fed ID# 4487)
James W. Clement (Fed ID# 12515)
WALKER GRESSETTE & LINTON, LLC
P.O. Drawer 22167
Charleston, SC 29413
Telephone:  843-727-2200
Facsimile:  843-727-2238
Email:  Gressette@WGLFIRM.com
Email:  Walker@WGLFIRM.com
Email:  Clement@WGLFIRM.com

*Counsel for Defendant-Appellee
Palmetto State Bank*

John A. Massalon (Fed ID# 5227)
Christy Ford Allen (Fed ID# 7549)

WILLS MASSALON & ALLEN LLC
Post Office Box 859
Charleston, South Carolina 29402
Telephone:  843-727-1144
Facsimile:  843-727-7696
Email:  jmassalon@wmalawfirm.net
Email:  callen@wmalawfirm.net

*Counsel for Defendant-Appellee
Chad Westendorf*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No.   25-1220          Caption:   Nautilus Insurance Company v. Cory Fleming, et al

Pursuant to FRAP 26.1 and Local Rule 26.1,

Palmetto State Bank

(name of party/amicus)

who is   Defendant/Respondent   , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2. Does party/amicus have any parent corporations?  ☑YES ☐NO
   If yes, identify all parent corporations, including all generations of parent corporations:
   **Palmetto State Bankshares, Inc., a South Carolina corporation.**

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
   If yes, identify all such owners:

i

12/01/2019 SCC                                     -1-

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: __/s/ _Thomas P. Gressette, Jr., Esq.___    Date:    March 25, 2025____

Counsel for: __Palmetto State Bank_____

ii

-2-

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _25-1220_         Caption: _Nautilus Insurance Company v. Cory Fleming, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Chad Westendorf_
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                              ☐YES ☑NO
      If yes, identify all such owners:

iii

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: __s/Christy Ford Allen_____    Date: _____3/24/2025_____

Counsel for: __Chad Westendorf_____

**iv**

-2-

[ **Print to PDF for Filing** ]

# TABLE OF CONTENTS

**DISCLOSURE STATEMENT – Palmetto State Bank**........................................ i

**DISCLOSURE STATEMENT – Chad Westendorf**............................................. iii

**TABLE OF CONTENTS**...............................................................................v

**TABLE OF AUTHORITIES**........................................................................ vii

**STATEMENT OF ISSUES**...........................................................................1

**STATEMENT OF THE CASE**.......................................................................1

    1.    Murdaugh and Fleming Admit They Acted Without the Knowledge or Participation of Westendorf. ...................................................................3

    2.    Nautilus Knew the Claim Likely Involved Fraud at the Time it Made the Decision to Enter the Settlement and Pay $3.8 Million to Obtain a Release of Murdaugh from the Claims of the Satterfield Estate...............................3

    3.    Westendorf's Role as Personal Representative was Confined by Fleming and Murdaugh; There is No Proof that Westendorf Knew About or Participated in the Schemes of Fleming and Murdaugh. ...............................................7

    4.    In Response to the Motions Filed by the Parties, the District Court Properly Exercised its Discretion and Authorized Discovery in Phases. ...................8

    5.    The District Court Properly Ruled on the Appellees' Motions for Summary Judgment. ...............................................................................................11

**SUMMARY OF ARGUMENT**......................................................................14

    I.    THE DISTRICT COURT REASONABLY EXERCISED ITS DISCRETION TO SEQUENCE DISCOVERY IN ACCORDANCE WITH RULE 26(b)(1) AND ITS PROPORTIONALITY REQUIREMENTS.............................................................................15

**II.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEE PALMETTO STATE BANK AND APPELLEE CHAD WESTENDORF.**............................19

    A.   Conspiracy.................................................................................20

    B.   Racketeer Influence and Corrupt Organizations Act (RICO)..................22

    C.   Negligence. .............................................................................23

    D.   South Carolina Unfair Trade Practices Act (SCUTPA)..........................25

**CONCLUSION**.....................................................................................27

**STATEMENT REGARDING ORAL ARGUMENT** ...........................................28

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT** ..........29

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page**

*Ardrey v. United Parcel Serv.*,
  798 F.2d 679, 682 (4th Cir. 1986)....................................................................15

*Barwick v. Celotex Corp.*,
  736 F.2d 946, 963 (4th Cir. 1984)...................................................................20

*Crystal Ice Co. v. First Colonial Corp.*,
  257 S.E.2d 496 (S.C. 1979)............................................................................25

*Drs. Stever and Latham, P.A. v. Nat'l Med. Enters., Inc.*,
  672 F. Supp. 1489, 1521 (D.S.C. 1987) *aff'd*, 846 F.2d 70
  (4th Cir. 1988)...............................................................................................25

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435, 448 (4th Cir. 2011)...................................................................18

*Huggins v. Citibank, NA.*,
  585 S.E.2d 275, 276 (S.C. 2003)....................................................................23

*Libertarian Party of Va. v. Judd*,
  718 F.3d 308, 313 (4th Cir. 2013)...................................................................20

*McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*,
  741 F.3d 480, 483 (4th Cir. 2014)...................................................................18

*Mey v. Phillips*,
  71 F.4th 203, 217 (4th Cir. 2023)...................................................................15

*Midland Mortg. Corp. v. Wells Fargo Bank, NA.*,
  926 F. Supp. 2d 780, 792 (D.S.C.), *aff'd sub nom.*,
  *Midland Mortg. Co.v. Wells Fargo Bank NA*,
  545 F. App'x 194 (4th Cir. 2013).....................................................................24

*Mitchell v. Data General Corp.*,
  12 F.3d 1310, 1316 (4th Cir. 1993).................................................................20

**vii**

| **Cases** | **Page** |
|---|---|

*Moore v. Weinberg,*
  644 S.E.2d 740, 750 (S.C. Ct. App. 2007) affd, 681 S.E.2d 875
  (S.C. 2009)......................................................................................22

*Moore v. Williamsburg Reg'l Hosp.,*
  560 F.3d 66, 78 (4th Cir. 2009), ………….……………….................26

*Othentec Ltd. v. Phelan,*
  526 F.3d 135, 140 (4th Cir. 2008)....................................................20

*Paradis v. Charleston Cnty. Sch. Dist.,*
  861 S.E.2d 774, 780 (S.C. 2021).....................................................21

*Pratt-Miller v. Arthur,*
  701 F. App'x 191, 194 (4th Cir. 2017)..............................................15

*Rowland v. Am. Gen. Fin., Inc.,*
  340 F.3d 187, 195 (4th Cir. 2003)....................................................15

*State ex rel. McLeod v. C & L Corp., Inc.,*
  280 S.C. 313 S.E.2d 334 (Ct. App. 1984).......................................25

*U.S. ex rel. Becker v. Westinghouse Savannah River Co.,*
  305 F.3d 284, 290 (4th Cir. 2002)....................................................15

*Wright v. Craft,*
  640 S.E.2d 486, 498 (S.C. Ct. App. 2006).......................................26

## **Statutes**:.

S.C. Code § 39-5-10(b).....................................................................27
S.C. Code § 39-5-20(a).....................................................................25

## **Rules**:

Fed. R. Civ. P. 16(b)(3)(B)(ii)............................................................16
Fed. R. Civ. P. 26(b)(1)......................................................................16

**STATEMENT OF ISSUES**

1.      Whether the district court reasonably exercised its discretion to sequence discovery in accordance with Rule 26(b)(1) and its proportionality requirements?

2.      Whether the district court properly granted summary judgment in favor of Appellee Palmetto State Bank and Appellee Chad Westendorf?

**STATEMENT OF THE CASE**

There is absolutely no question as to the fundamental misdeed at the center of this case. Defendant Alex Murdaugh ("Murdaugh") and Defendant Cory Fleming ("Fleming") admit in their filings and deposition testimony that they surreptitiously agreed to steal proceeds paid by Nautilus Insurance Company ("Nautilus" or "Appellant") to settle a wrongful death claim brought by the Estate of Gloria Satterfield after her death following a fall down the outside stairs at Murdaugh's home. JA3268, JA2787, JA3333. Defendant Murdaugh further admits he "invented a story about his dogs causing the death of Gloria Satterfield" in order to create grounds for "his own liability to the Satterfield beneficiaries." JA3268. Murdaugh admits he concocted this story to cause Nautilus to pay to settle a claim of the Satterfield Estate against him "which [Murdaugh] intended to, and did, steal". JA3268. Murdaugh and Fleming[1] succeeded in their now-admitted scheme to steal settlement funds without paying them to the Estate.

---

[1] Fleming made three payments to himself of false expenses. Appellant's Br. at 16.

1

What is important to this appeal is that there is also no question that Nautilus failed to demonstrate any genuine issue of material fact that Appellee Chad Westendorf ("Westendorf")[2] or Appellee Palmetto State Bank ("PSB") had any knowledge of, or in any way knowingly participated in, these wrongful acts of Murdaugh or Fleming. For this reason, the district court correctly granted summary judgment in favor of Appellees Westendorf and PSB. JA3734.

Aware it is unable to demonstrate a genuine issue of material fact indicating the knowledge or involvement of Westendorf or PBS in this scheme, Nautilus hinges its appeal on a contention that the district court improperly limited discovery. The problem is, however, the discovery Nautilus sought was a fishing expedition into prior, wholly dissimilar, unrelated actions of Murdaugh and Russell Laffitte (a former PSB employee) that the district court found were "too attenuated" to connect to the theft of the Satterfield settlement money by Murdaugh and Fleming. JA3760.[3]

---

[2] Westendorf was a loan officer of PSB in its Hampton branch office.

[3] "[T]his Court will not hold PSB liable for its alleged involvement in a conspiracy to defraud Nautilus based on the actions of a former PSB executive, Russell Lafitte, who is not named in this action nor alleged to have been involved in this scheme. That Lafitte abused his role as a Personal Representative while 'acting with the cloak of PSB authority' in other instances at Murdaugh's behest does not create a reasonable inference that PSB was engaged in a conspiracy to bring a fraudulent claim and cause Nautilus to settle it, which is the injury Nautilus alleges here." JA3743.

1. **Murdaugh and Fleming Admit They Acted Without the Knowledge or Participation of Westendorf.**

Both Murdaugh and Fleming admitted that they worked together without the knowledge or participation of Westendorf.

As the district court noted in its Order, "Fleming testified that Westendorf was not involved in preparing either the settlement petitions or the disbursement sheets" which were used to complete the jointly executed fraud. JA3742. When asked if Westendorf had any knowledge of the plan by Fleming and Murdaugh to misappropriate settlement funds, Fleming stated "absolutely not." JA2821. Murdaugh corroborates Fleming's testimony:

> Defendant did not act in concert with any 'co-conspirators' for the purpose of causing Nautilus to pay a fraudulent claim. Persons other than Defendant, including Mr. Westendorf and Mr. Fleming, were unaware Defendant converted to his own use money believed to be disbursed to the Satterfield estate.

JA2100.

2. **Nautilus Knew the Claim Likely Involved Fraud at the Time it Made the Decision to Enter the Settlement and Pay $3.8 Million to Obtain a Release of Murdaugh from the Claims of the Satterfield Estate**.

Despite pretending that it had no reason to believe it was being defrauded by Murdaugh, the record below is replete with facts that prove Nautilus was aware the liability claim against Murdaugh was contrived and possibly fraudulent.[4] The district

---

[4] Nautilus goes so far as to state PSB and Westendorf "ensured that Nautilus did not know about the fraudulent scheme during the handling of the claim." Appellant's

court noted many of the facts establishing Nautilus's notice that it was being scammed by Murdaugh before it decided to settle the claim. JA3735.

On March 20, 2018, nine months before the appointment of Westendorf as successor personal representative and just two days after Nautilus's claim file was opened, Amy Miller, the primary Nautilus adjuster assigned to the claim, entered the below note revealing that Nautilus was already informed the claim was "fishy":

| Author | Amy Coryer-Miller | Mar 22, 2018 3:52 PM | |
|---|---|---|---|
| Topic | Sensitive | | Questionable |
| Related To | Claim | | The Lloyd's adjuster believes this claim is very questionable and "fishy." He said the law firm representing the Estate is the policyholder's former law firm. He said it is very rare that a partner of a law firm would represent a client adverse to a former partner. He also said that he pulled an obituary for Ms. Satterfield that indicated the policyholder is a relative of Ms. Satterfield. This is contrary to what the policyholder told him. The Lloyd's adjuster also questions whether Ms. Satterfield regained consciousness for a moment just long enough to tell the policyholder that one his dogs jumped on her and knocked her over. He also states that the policyholder is adamant about accepting liability and is seeking an acknowledgement that the case is worth policy limit |

JA2154. On April 5, 2018, Miller wrote in the claim notes, "[t]he Lloyd's adjuster and I believe this claim is very questionable" JA2154.

Nautilus's Chief Claims Officer, Joel Lasky, noted the claim was questionable

---

Br. at 18. Nautilus would have this Court believe it did not see the "red-flag facts that would have precluded settlement and prompted referral of the case to its fraud unit." Appellant's Br. at 18. As demonstrated by this Statement of the Case, these assertions are in direct contradiction to Appellant's own records which point out red-flag after red-flag that Nautilus identified, considered, and then consciously disregarded.

in his May 2, 2018, email:

> The claimant was found unconscious and in a pool of her own blood at the front stairs of the insured's estate. There are no evident premises defects. The claimant was the insured's housekeeper. The insured's wife discovered the claimant, called 911, and called her husband, the named insured. ***When the named insured arrived, he <u>claimed</u> that the claimant briefly regained consciousness, indicated that the insured's dogs knocked her over, and then she lost consciousness again.***
>
> ***
>
> ***There are some questionable things about the claim, and we need to discuss those***.

JA2160-2161 (double emphasis added). Lasky warned, "This is one where we need to discuss the potential exposure, and I would prefer that we do that orally rather than on the written page." JA2160.

Nautilus's Vice President of Claims, Kimberly Levensky, sent an email on May 16, 2018, to the Chief Claims Officer about the importance of involving an accomplished private investigator, given the suspicious account provided by Murdaugh:

> This is the woman who was allegedly knocked off the porch by the insured's dogs. . . .[W]e're getting a very good PI on the file right now through JR Murphy. The family and claimant's firm (insured's prior firm) are very politically connected.

JA2162.

When Nautilus requested Mrs. Satterfield's medical records for the two years preceding her fall, Murdaugh asked to schedule mediation of the claim "asap."

5

JA2163. Miller knew the timing of his request was not merely coincidental, sending

the below email to Lasky:

> Murdaugh wanted the mediation set up asap since he knew we had requested prior medical records. He knew of Satterfield's prior health problems and he didn't want that to come out. He was upset that we requested 2 years of prior medical records. ***Greed is the motivator here. Whether we can prove it is another question.***

JA2163 (double emphasis added).

Heading into mediation, one of Nautilus's attorneys advised Nautilus, "I smell

a trap." JA2166-2167. The evening of the unsuccessful mediation on March 22,

2019, Nautilus' coverage counsel sent its adjuster the following email:

**From:** Katherine Karam (1264) [mailto:Katherine.Karam@phelps.com]
**Sent:** Friday, March 22, 2019 7:18 PM
**To:** Coryer Miller, Amy L. <ACoryerMiller@nautilus-ins.com>
**Subject:** [EXTERNAL] Re: Estate of Gloria Satterfield v. Murdaugh

Worst case insurance fraud and injustice I have ever heard of!

———————————————————
Katherine Karam
Partner, Insurance and Reinsurance
Phelps Dunbar LLP
504-584-9264 direct
Katherine.Karam@phelps.com

JA2172. Miller responded, "I wish there was a way to prove it." JA2172. In an email

exchanged with Miller Karam also stated, "This is despicable." JA2175.

Three days later, on March 25, 2019, Nautilus knowingly agreed to pay the

$3.8 million, disregarding the reservations of all concerned. JA2176-2177. Nautilus

6

is not the innocent it pretends to be.

**3. Westendorf's Role as Personal Representative was Confined by Fleming and Murdaugh; There is No Proof that Westendorf Knew About or Participated in the Schemes of Fleming and Murdaugh.**

Murdaugh requested Westendorf serve as the successor personal representative of the Estate of Gloria Satterfield, represented by Murdaugh's close friend, Fleming. Even though Westendorf had never been involved in a lawsuit before, much less serve as a personal representative, Fleming did not explain to Westendorf the responsibilities of a PR, nor provide Westendorf with any records of the Estate. JA2579, JA2605-2606, JA2693-2696. Fleming did not copy Westendorf on ANY communications with third parties, did not provide Westendorf drafts of pleadings or agreements, and did not consult with Westendorf regarding the merits of the case, litigation strategy or the judicial process. JA2696-2697. The district court discussed this relative lack of involvement of Westendorf in its Order. JA3742.

Westendorf did not handle the settlement funds that were stolen. Fleming's investigator hand-carried the $3.8 million Nautilus settlement check to Westendorf, instructed Westendorf to endorse check, and then returned to Fleming's law firm with the check. JA2652. It is undisputed Fleming had complete control of the Nautilus settlement funds and Westendorf had no involvement whatsoever in their disbursement. JA2698, JA2700.

7

**4. In Response to the Motions Filed by the Parties, the District Court Properly Exercised its Discretion and Authorized Discovery in Phases.**

On August 15, 2023, the Court held a hearing on numerous motions dealing with discovery as well as Nautilus's motion to amend its amended complaint and PSB's motion for summary judgment. The court began by explaining its familiarity with the case and the issues.[5] The court then noted that the nine fully briefed motions pending indicated the case was "a little bit of a run-away train" which the court intended to remedy. JA1408. His Honor explained, "we're going to organize this case in a way that's logical and coherent and not chaotic." JA1408.

During the hearing, the district court exercised its discretion to limit discovery and implement discovery in two phases, with the second phase being dependent on what was discovered in the first phase:

> [W]e're not having unregulated discovery in this case. We're not going to bury defendants in an avalanche of documents in which there's not plainly a basis in the case to do that.
>
> So here's how we're going to do it. There's a threshold question. And this primarily focuses on the potential liability of Palmetto State Bank; that is, did the bank do anything in the Satterfield matter to which it is legally culpable? And if it didn't, all that other stuff about

---

[5] Having presided over the criminal trial of Russell Laffitte, the district court was well aware of the offenses for which he was convicted. His convictions for conspiring with Alex Murdaugh involved conduct from *2011 through 2014* in which he assisted Murdaugh in his misappropriation of funds of clients of the law firm of Peters Murdaugh Parker Eltzroth & Detrick ("PMPED") through issuing cashier checks and crediting accounts within PSB. The settlements obtained for these clients of PMPED were all legitimate. None were the result of fabricated facts, and none had any relation whatsoever to Nautilus.

connected to Laffitte and Murdaugh becomes an academic question.

***

So let's talk a little bit about how we're going to manage this initial stage of discovery on Palmetto State Bank's potential culpability. There are allegations in the complaint, Mr. Rannik, that, for instance, that Westendorf's service as a personal representative was within Palmetto's control. Okay. If true, that would be an important fact. Okay? That's Paragraph 13 of the complaint. There are, obviously, witnesses who could potentially prove or disprove that allegation.

***

In the conspiracy count, [Nautilus alleges] Murdaugh and the co-conspirators agreed to a scheme. I want to know who were these people? We need to have them deposed. That's a piece of information I don't have. I'd like to know if there's any merit to that.

[It is alleged] Murdaugh and co-conspirators agreed to a scheme to deceive Nautilus into paying insurance proceeds. Did Palmetto State Bank or Westendorf even know about Nautilus. Nautilus was an excess carrier. Did they even know about them? Maybe they did. I don't know.

Falsely representing to Nautilus the existence of an arm's length lawsuit. Who made that representation? Westendorf? Palmetto State Bank? Who did that? Were they co-conspirators? Did they join, did they have a common scheme? What was that common scheme or plan? What was that agreed upon conspiracy?

There are allegations that the bank had a fiduciary duty to Nautilus. Where did that come from? Had a duty to Nautilus, where did that duty derive from?

Those are the kind of facts I want sorted out before we go any further about looking beyond the Satterfield scheme. And if Palmetto State Bank and/or Westendorf didn't do anything wrong regarding having no civil liability, then the fact that there were other frauds committed by other persons who had a tie to Palmetto State Bank then becomes, in my view, a legal irrelevance.

JA1410-1413.

Following the hearing, the court issued an Order granting Nautilus' motion to amend and denying PSB's motion for summary judgment without prejudice. JA1402-1404. The Order directed the parties to propose "a discovery schedule that

9

first focuses on the liability of the Defendants regarding the payment by Plaintiff of the claim arising out of the death of Gloria Satterfield." JA1403-1404. The Order further instructed Nautilus to pursue discovery "to determine if there is legal liability of certain Defendants relating to Plaintiff's payment of funds on the Satterfield death claim." [6] JA1404. If there was proof that Westendorf and/or PSB were aware of the fraudulent nature of the claim presented to Nautilus or knew about or participated in the theft of the settlement proceeds, then the Court indicated it would allow a second phase of discovery into the prior actions of Russell Laffitte and Murdaugh many years before the Satterfield settlement. JA1410-1414. In its Fourth Amended Scheduling Order, the court approved the parties' proposed discovery schedule, setting March 15, 2024, as the deadline for all Phase One discovery. JA1529.

Thereafter, Nautilus deposed Cory Fleming, Russell Laffite, John Grantland (the attorney retained by Nautilus to defend Murdaugh) and Fred Kuhn, Jr. (as Moss & Kuhn, P.A.'s 30(b)(6) designee). Nautilus had previously deposed John Peters (PSB's Operations Officer and Compliance Manager), Jan Malinowski (as PSB's Rule 30(b)(6) designee), and Westendorf.

---

[6] After Nautilus subsequently moved for clarification, JA1493-1503, the Court issued an order reaffirming its "previously determined course in managing this litigation" and discussing its rulings at the hearing on August 15, 2023. JA1511-1512, JA1518-1521.

10

After the close of the first phase of discovery, PSB and Westendorf renewed their motions for summary judgment.

### 5. The District Court Properly Ruled on the Appellees' Motions for Summary Judgment.

After review of the motions and the complete record before it, the district court concluded "that Nautilus has no viable claims against Defendants Westendorf and PSB" and, therefore, granted summary judgment in their favor as to all causes of action alleged against them in the Second Amended Complaint.[7] JA3739.

In so ruling, the district court discussed at length Nautilus's failure to create a genuine issue of fact as to either Westendorf's or PSB's knowledge of, or participation in, the scheme of Murdaugh and Fleming. JA3742-3743 ("[T]here is no record evidence creating a reasonable inference of Westendorf s knowledge or participation in the scheme between Murdaugh and Fleming to injure Nautilus."). Having found no facts supporting liability of Westendorf, the court found his actions could not be a basis for imposing vicarious liability on PSB.

The court also rejected Nautilus' assertion that PSB should be liable for the

---

[7] The district court also denied Nautilus' motion for partial summary judgment seeking a determination "that its decision to settle the Satterfield Estate claim should not be considered the proximate cause of its own harm because the underlying settlement has no legal effect." JA3737-3738. Nautilus has appealed. To the extent any response by these Appellees is required, Appellees oppose the appeal and ask this Court to affirm the decision of the district court denying Nautilus' motion for partial summary judgment.

11

misappropriation of the Satterfield settlement proceeds based on Murdaugh's misappropriation of other client settlement funds with the assistance of Russell Laffitte more than five years before the Satterfield incident where Russell Laffitte "is not named in this action nor alleged to have been involved in this scheme." JA3741-3743. The court reasoned:

> The problem with Nautilus' theory of imputed liability is twofold: (1) Laffitte is not a Defendant to this action, and the Court declines to impute his actions to PSB in order to hold PSB liable for distinct activity not alleged to involve Lafitte, and (2) Fleming has admitted that Westendorf was not aware of the scheme between Murdaugh and himself to misappropriate funds from the Nautilus settlement.

JA3741-3742.

As to Nautilus' negligence claims, the court found that "PSB did not owe an independent duty of care to Nautilus, as banks in South Carolina do not owe customers or non-customers a duty of care." JA3745. The court further found that because Westendorf likewise did not owe Nautilus any duty, there was no support for a claim that a duty could be imputed from Westendorf to PSB. JA3745. As to Nautilus' claims under the South Carolina Unfair Trade Practices Act ("SCUPTA"), the court found that:

> Neither Westendorf's service as a Personal Representative, nor PSB's authorization of his service as a Personal Representative, constitutes "an unfair or deceptive act in the conduct of trade or commerce." Neither party "advertis[e"]d], offer[ed] for sale, [sold] or distribut[ed]" its service as a Personal Representative, and this Court does not view an individual's service in this capacity to constitute trade or commerce.

12

JA3749.

With regard to Nautilus' claim for violation of The Racketeer Influenced and Corrupt Organizations Act ("RICO"), the court rejected Nautilus' theory that the actions of Laffitte and Murdaugh render Westendorf and PSB liable.

> Nautilus seeks to rely on the actions of Murdaugh and Lafitte – which predate the acts alleged in this case by multiple years – to argue the existence of an association-in-fact enterprise involving the named Defendants to this action, contending these prior acts culminated to cause Nautilus' payment of a fraudulent insurance claim. The Court finds this connection to be far too attenuated to sustain Nautilus' RICO claim.

JA3760. The district court further found the separate actions of Laffitte and Murdaugh are insufficient to establish a criminal enterprise on behalf of Westendorf and/or PSB, who are totally separate parties. JA3760-3761.

The district court also granted summary judgment for Westendorf and PSB as to all other causes of action alleged by Nautilus. However, in this appeal Nautilus has only raised the court's decisions as to conspiracy, negligence, SCUTPA, and RICO.

13

## SUMMARY OF ARGUMENT

Nautilus bases its claims of insurance fraud on Murdaugh's phony story that his dogs caused Ms. Satterfield's fall, coupled with Murdaugh's and Fleming's misappropriation of the settlement funds that should have been paid to Ms. Satterfield's sons. After conducting the extensive discovery authorized by the court, Nautilus was unable to point to any proof in the record that either Westendorf or PSB participated in Murdaugh's and Fleming's scheme or had any knowledge of it. Discovery into the actions of Murdaugh years before the events of this case of dissimilar and wholly unrelated schemes could not fill this critical evidentiary void.

The district court acted well within its discretion in preventing a disproportionate burden on these Appellees when it split discovery into two phases, conditioning discovery in the second phase on whether Nautilus could create a genuine issue of material fact somehow linking Appellees to the wrongful conduct that Nautilus contended caused it financial loss, which it failed to do. The district court properly granted Appellees' motions for summary judgment for multiple reasons in a well-reasoned and thoughtful order.

14

**I.    THE DISTRICT COURT REASONABLY EXERCISED ITS DISCRETION TO SEQUENCE DISCOVERY IN ACCORDANCE WITH RULE 26(b)(1) AND ITS PROPORTIONALITY REQUIREMENTS.**

"A district court has 'wide latitude in controlling discovery and . . . its rulings will not be overturned absent a showing of clear abuse of discretion.'" *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003).  "The latitude given the district court extends as well to the manner in which it orders the course and scope of discovery." *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986). This Court has explained its deference to the district court's discovery rulings, stating: "We afford substantial discretion to a district court in managing discovery and review discovery rulings only for abuse of that discretion." *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002). This abuse of discretion standard applies specifically to a district court's ruling on whether to allow a party "to engage in further discovery prior to the entry of summary judgment." *Pratt-Miller v. Arthur*, 701 F. App'x 191, 194 (4th Cir. 2017). A district court only "abuses its discretion when its conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Mey v. Phillips*, 71 F.4th 203, 217 (4th Cir. 2023) (internal quotation marks omitted).

The district court's discretion over discovery is codified in the Federal Rules of Civil Procedure. Rule 16 explicitly allows a judge to "modify the extent of discovery" to preserve the judicial economy and control the progress of a case. Fed.

15

R. Civ. P. 16(b)(3)(B)(ii). Judges have the discretion to ensure that discovery in the federal courts is "proportional to the needs of the case, considering [among other things] . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Nautilus has not demonstrated that the district court was guided by erroneous legal principles or a clearly erroneous factual finding in exercising its inherent authority to determine whether the extensive discovery of past, unrelated conduct sought by Nautilus was proportional to the needs of the case. Without this showing, the district court is deemed to have properly exercised its discretion, and Nautilus's appeal fails.

Appellant's main argument for claiming that the trial court abused its discretion lies in its contention that the court "improperly blocked Nautilus' discovery into the relationship between the Bank and Murdaugh that predated the Satterfield fraudulent settlement." Appellant's Br. at 27. Not only has Nautilus failed to explain how the district court's discovery ruling was based on legal error or a clearly erroneous factual finding, but its contention is also simply not substantiated by the record.

At the August 15, 2023, hearing, the court clearly explained, "[It is alleged] Murdaugh and co-conspirators agreed to a scheme to deceive Nautilus into paying

16

insurance proceeds. Did Palmetto State Bank or Westendorf even know about Nautilus. . . . Did they even know about them?" JA1412. The court further identified that Phase 1 discovery should focus on the identity of the alleged conspirators and proof as to each, including: Were the Bank and Westendorf actually co-conspirators? "Did they join, did they have a common scheme? What was that common scheme or plan? What was that agreed upon conspiracy?" JA1412.

The Nautilus narrative of "blocked" discovery is not accurate. The district court made clear that to keep discovery proportional, discovery would merely be staged:

> Those are the kind of facts I want sorted out before we go any further about looking beyond the Satterfield scheme. And if Palmetto State Bank and/or Westendorf didn't do anything wrong regarding having no civil liability, then the fact that there were other frauds committed by other persons who had a tie to Palmetto State Bank then becomes, in my view, a legal irrelevance.

JA1412-1413.

Under the final scheduling order Nautilus had more than seven months to pursue depositions and other discovery to try to connect these Appellees to the "common scheme," yet was unable to make that connection. Nautilus served multiple sets of written discovery upon the defendants. PSB produced more than 35,000 documents, including 15,000 pages of PSB employee emails. Prior to the August 15, 2023, hearing, Nautilus deposed PSB employee John Peters (PSB's Operations Officer and Compliance Manager), Jan Malinowski (as PSB's Rule

17

30(b)(6) designee), and Chad Westendorf. After the hearing Nautilus deposed Fleming, Russell Laffite, and John Grantland. Nautilus's discovery after the hearing is important because Judge Gergel had explained what Nautilus needed to accomplish in the initial phase for the discovery of prior conduct requested by Nautilus to be allowed.

Appellant relies on two cases, neither of which support a finding of an abuse of discretion by the district court here in organizing discovery. First, Appellant cites to *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). That case, however, stands for the premise that a court should treat a motion to dismiss as a motion for summary judgment when the non-moving party has not had any opportunity for discovery. That was not the case here, where Nautilus participated in extensive discovery before the court considered the defendants' motions for summary judgment.

Appellant also quotes this Court's decision in *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, but fails to include the decision's very clear statement that summary judgment is indeed proper "after adequate time for discovery." 741 F.3d 480, 483 (4th Cir. 2014) (internal quotation marks and citation omitted).

The court's decision to stage discovery was reasonable and based upon its extensive knowledge of the facts of this case and of the unrelated prior misdeeds of

18

Murdaugh and Laffitte it gained from presiding over the trial in the federal prosecution of Russell Laffitte for this prior wrongful conduct. The court did not commit an error of law in containing discovery nor did the court premise its ruling on an erroneous factual finding. The district court's well considered phasing of discovery was not an abuse of discretion.

**II.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEE PALMETTO STATE BANK AND APPELLEE CHAD WESTENDORF.**

Appellant also contends the district court should not have granted summary judgment to PSB and Westendorf on its causes of action for conspiracy, negligence, SCUTPA, and RICO, yet cannot point to any proof in the record that implicates PSB or Westendorf in the fraud Nautilus claims was perpetrated upon it. Instead, Appellant asks this Court to speculate that more discovery into prior unrelated conduct involving Russell Laffitte, not Westendorf, somehow would have created a genuine issue of material fact. However, Appellant makes no proffer of any kind — formal or informal— of what that evidence might be and how it would pertain to the Satterfield settlement years later. This speculation does not create a genuine issue of material fact.

"The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."

19

*Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). To survive a motion for summary judgment "[t]he nonmoving party cannot create a genuine issue of material fact *through mere speculation* or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (internal quotation marks omitted) (emphasis added).

Moreover, Westendorf and PSB were further entitled to summary judgment for separate legal reasons on the four causes of action where Nautilus claims the district court erred in granting summary judgment.

## A. Conspiracy.

Appellant argues that the district court improperly granted summary judgment as to the conspiracy claim against Appellees, but it never presents any material facts on which "a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks omitted). Rather than deal with the actual record in this case, Appellant circles back to its argument that the district court should have allowed more discovery and then speculates it would have found facts sufficient to support the alleged claims. However, "[g]enuine issues of material fact cannot be based on mere speculation or the building of one inference upon another." *Barwick v. Celotex Corp.,* 736 F.2d 946, 963 (4th Cir. 1984).

As to these Appellees, Nautilus fails to point to any proof of the first two

20

elements of a civil conspiracy claim – "(1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means." JA3740 (citing *Paradis v. Charleston Cnty. Sch. Dist.,* 861 S.E.2d 774, 780 (S.C. 2021)). As the district court found, there was no proof that Westendorf and PSB agreed with Murdaugh and Fleming to commit an unlawful act against Nautilus. The conspirators were Murdaugh and Fleming. The district court discussed at length the absence of proof implicating Westendorf or PSB and the reasons for rejecting the same arguments Nautilus is now pushing on this Court. JA3741-3742.

Although not specifically mentioned by the district court, the record substantiates that PSB had no involvement at all with the Satterfield claim. Westendorf's served as personal representative outside his responsibilities with PSB. JA2563. PSB did not guide or control him nor know anything about it other than Russell Laffitte and Charles Laffitte, Jr. telling Westendorf they had no objection to his serving individually in that capacity. JA2562-2563.

As explained in the district court's order denying the Nautilus Motion for Reconsideration of the Order Granting Summary Judgment,

> This Court undertook an exhaustive review of the record and concluded that no evidence supported an inference that Chad Westendorf had knowledge of the scheme or acted with the specific intent to defraud the Satterfield Estate as part of a conspiracy with Murdaugh and Fleming. (Dkt. No. 218 at 7-10). That Chad Westendorf received two payments while serving as Personal Representative for the Satterfield Estate does not create a genuine dispute of material fact as to his knowledge of the object of the civil conspiracy nor his specific

21

intent to further it. *See Moore v. Weinberg,* 644 S.E.2d 740, 750 (S.C. Ct. App. 2007), *aff'd*, 681 S.E.2d 875 (S.C. 2009). In its motion for reconsideration Plaintiff fails to draw the Court's attention to any circumstantial evidence that presents a genuine dispute of material fact as to Chad Westendorf s knowledge of or intent to further the civil conspiracy.

JA3796. The district court correctly found "insufficient evidence to sustain Nautilus' claim that Westendorf or [PSB] were engaged in a civil conspiracy to defraud Nautilus." JA3741.

**B. Racketeer Influence and Corrupt Organizations Act (RICO).**

Appellant devotes only two sentences in its Brief to support its request that this Court reverse summary judgment for PSB and Westendorf as to the claims Nautilus alleged under RICO. Appellant's Br. at 34-35. In those two sentences Nautilus again argues in circles, rather than presenting any issue of material fact. Appellant weakly asserts that it "pointed to the previous fraudulent conspiracy of Murdaugh and Laffitte to launder money through the Bank to argue an association-in-fact enterprise involving the Bank and Murdaugh." Appellant's Br. at 34. Nautilus, however, fails to link this prior conduct to the Satterfield scheme that involved only Murdaugh and Fleming.

The district court noted this important omission in ruling against Nautilus on the RICO claim:

> Nautilus fails to establish that Defendants' [Westendorf's and PSB's] alleged participation in a Ponzi scheme proximately caused Nautilus' injury. Nautilus seeks to rely on the actions of Murdaugh and Lafitte –

22

which predate the acts alleged in this case by multiple years – to argue the existence of an association-in-fact enterprise involving the named Defendants to this action, contending these prior acts culminated to cause Nautilus' payment of a fraudulent insurance claim. The Court finds this connection to be far too attenuated to sustain Nautilus' RICO claim. The common thread between that criminal act and the activity alleged here is Murdaugh, and Murdaugh only. For this reason, Nautilus cannot prove the existence of an "association-in fact-enterprise" that is "distinct from the persons alleged to have violated § 1962(c)."

JA3760.

Summary judgment was proper as to the RICO claims against Appellees.

## C. Negligence.

In granting summary judgment to PSB on the negligence claims asserted by Nautilus,[8] the district court correctly ruled that, as a matter of law, the Bank owed no legal duty to Nautilus and therefore the claims could not survive summary judgment. JA3746 ("The absence of any duty owed by PSB to Nautilus is fatal to Nautilus' negligence claim.") (citing *Huggins v. Citibank, NA.*, 585 S.E.2d 275, 276 (S.C. 2003) ("An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff.")). On appeal, Nautilus fails to show that the district court committed legal error in holding neither of these Appellees owed a legal duty to Nautilus.

The record is unblemished on PSB's lack of relationship with Nautilus. PSB

---

[8] "Nautilus [advanced] various theories of … liability, including (1) duty to warn, (2) duty to supervise/train, and (3) respondeat superior." JA3745.

23

had no dealings of any kind with Nautilus. Nautilus was not a customer of the PSB. The Satterfield settlement proceeds were not deposited with PSB. Absent such a relationship or a situation where PSB put Nautilus in a situation which increased the risk of harm to it, PSB did not owe a duty to Nautilus, and the district court's ruling to this effect was not legal error. As the district court noted, ". . . PSB did not owe an independent duty of care to Nautilus, as banks in South Carolina do not owe customers or non-customers a duty of care." JA3745 (citing *Midland Mortg. Corp. v. Wells Fargo Bank, NA.*, 926 F. Supp. 2d 780, 792 (D.S.C.), *aff'd sub nom.*, *Midland Mortg. Co. v. Wells Fargo Bank NA*, 545 F. App'x 194 (4th Cir. 2013)).

In its limited argument as to the negligence claims, Appellant's Brief asks this Court to change the law of South Carolina and impose a duty where none legally exists. Appellant's Br. at 35. Nautilus's entreaty to this Court is even more unbelievable when one considers that Westendorf owed his duties to the Estate, not the party adverse to the Estate, namely Nautilus.

This non-sequitur is manifest in the district court's finding that "PSB could not have reasonably anticipated harm to Nautilus arising from the actions of an employee who served as the Personal Representative of a party adverse to Nautilus in the context of an insurance settlement." JA3746.

With regard to Westendorf, the court rejected Nautilus' attempt to impute fault or knowledge from Fleming to Westendorf. JA3751. For Nautilus to argue that the

24

constructive knowledge of Fleming, the attorney, should be imputed to Westendorf, his client, ignores that this general rule does not apply when the attorney is acting fraudulently against his client's interest and the injured third party has notice of the fraud. *See Crystal Ice Co. v. First Colonial Corp.*, 257 S.E.2d 496 (S.C. 1979). It was undisputed that Nautilus had more information regarding Fleming and Murdaugh's relationship, and the fishiness, if not fraud, of the claim than did Westendorf who had none.

### D. South Carolina Unfair Trade Practices Act (SCUTPA).

The district court correctly granted summary judgment to PSB and Westendorf on the South Carolina Unfair Trade Practices Act ("SCUTPA") claim. SCUTPA provides substantive rights that were not previously actionable under the common law by making certain defined conduct unlawful. *See State ex rel. McLeod v. C & L Corp., Inc.*, 280 S.C. 313 S.E.2d 334 (Ct. App. 1984). Specifically, it creates "a private right of action for persons damaged by acts or practices declared unlawful by § 39-5-20," *Drs. Stever and Latham, P.A. v. Nat'l Med. Enters., Inc.*, 672 F. Supp. 1489, 1521 (D.S.C. 1987) *aff'd*, 846 F.2d 70 (4th Cir. 1988). The acts or practices declared unlawful are those "[u]nfair methods of competition and unfair or deceptive acts or practices **in the conduct of any trade or commerce** . . . ." S.C. Code § 39-5-20(a) (emphasis added).

As the district court pointed out, Nautilus asserts it should be permitted to

25

bring a SCUTPA claim against both PSB and Westendorf, despite the fact that Nautilus had absolutely no relationship with PSB or Westendorf. JA3748-3749. Instead of relying on a relationship, the Nautilus claim is based on a theory that PSB's approval of Westendorf serving as personal representative of the Satterfield estate, an activity completely outside of his work at PSB, means that PSB and Westendorf violated SCUPTA because paperwork related to the estate was processed by the courts. JA3748-3749.

The district court properly rejected Nautilus's argument and ruled that the conduct Nautilus relied upon for this claim was not "trade" and "commerce" as defined by SCUPTA:

> Nautilus' creative theory lacks evidentiary support. Neither Westendorf's service as a Personal Representative, nor PSB's authorization of his service as a Personal Representative, constitutes "an unfair or deceptive act in the conduct of trade or commerce." Neither party 'advertis[e"d], offer[ed] for sale, [sold] or distribut[ed]'" its service as a Personal Representative, and this Court does not view an individual's service in this capacity to constitute trade or commerce. *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006). SCUTPA does not apply to the conduct Nautilus complains of.

JA3749.

Courts routinely hold that a claim for violating SCUTPA cannot be made against a party who did not advertise, offer for sale, sell, or distribute any services or property with respect to the transaction at issue. *Moore v. Williamsburg Reg'l* (4th Cir. 2009) (finding that the hospital's peer review of physicians privileges "was not

taken 'in the conduct of any trade or commerce' as defined by S.C. Code § 39-5-10(b) since it did not occur in the conduct of 'advertising, offering for sale, sale or distribution of any services and any property . . . . and any other . . . thing of value.'").

Lack of any causation is also fatal to the SCUTPA claim. It is beyond genuine dispute that the Appellees did not proximately cause the damages alleged by Nautilus. Nautilus' loss was the result of its informed decision to settle the Satterfield claims, for less than policy limits, to end the exposure to it and its insured. Appellees played absolutely no role in the business decision that Nautilus made.

The district court properly granted summary judgment as to the SCUPTA claims.

## CONCLUSION

For the reasons set forth herein, this Court should affirm the district court's grant of summary judgment in favor of Appellees Palmetto State Bank and Chad Westendorf.

27

## **STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Local Rule 34(a), Appellees Palmetto State Bank and Chad Westendorf do not specifically request oral argument unless this Court finds the same would materially assist in resolution of the portions of the appeal related to Appellees Palmetto State Bank and Chad Westendorf.


Respectfully submitted:

| | |
|---|---|
| /s/  *Thomas P. Gressette, Jr* | /s/  *Christy Ford Allen* |
| Thomas P. Gressette, Jr. (Fed ID# 7261) | Christy Ford Allen (Fed ID# 7549) |
| G. Trenholm Walker (Fed ID# 4487) |  John A. Massalon (Fed ID# 5227) |
| James W. Clement (Fed ID# 12515) | |
| WALKER GRESSETTE & LINTON, LLC | WILLS MASSALON & ALLEN LLC |
| P.O. Drawer 22167 | Post Office Box 859 |
| Charleston, SC 29413  Telephone: | Charleston, South Carolina 29402 |
| 843-727-2200 Facsimile: | Telephone:  843-727-1144 |
| 843-727-2238 Email: | Facsimile:   843-727-7696 |
| Gressette@WGLFIRM.com Email: | Email:  jmassalon@wmalawfirm.net |
| Walker@WGLFIRM.com Email: | Email:  callen@wmalawfirm.net |
| Clement@WGLFIRM.com | |
| | |
| *Counsel for Defendant-Appellee* | *Counsel for Defendant-Appellee* |
| *Palmetto State Bank* | *Chad Westendorf* |

28

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments): This brief contains **6,405** words.

2.  This brief complies with the typeface requirements because: This brief has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Times New Roman.

*/s/ Thomas P. Gressette, Jr., Esq.*
Party Name: Defendant-Appellee Palmetto State Bank

*/s/  Christy Ford Allen*
Party Name:  Defendant-Appellee Chad Westendorf

Date: February 9, 2026

29