**No. 25-1220**

_____

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

NAUTILUS INSURANCE COMPANY,

*Plaintiff – Appellant*

v.

CORY FLEMING; MOSS & KUHN, P.A.;
CHAD WESTENDORF; PALMETTO STATE BANK,

*Defendants – Appellees*

_____

APPEAL FROM THE U.S. DISTRICT COURT OF THE
DISTRICT OF SOUTH CAROLINA
*Charleston Division*

_____

**REPLY BRIEF OF APPELLANT NAUTILUS INSURANCE COMPANY
TO THE RESPONSE BRIEFS OF APPELLEES PALMETTO STATE
BANK AND CHAD WESTENDORF AND APPELLEE MOSS & KUHN, PA.**

_____

Jaan G. Rannik, D.S.C. Bar No. 12621
jrannik@cohenkinne.com
Cohen Kinne Valicenti & Cook LLP
66 W. St., Ste. 201
Pittsfield, MA 01201
T: 413-443-9399
F: 413-553-0335

Jack R. Reiter, FBN 0028304
jack.reiter@gray-robinson.com
Robert C. Weill, FBN 0009962
robert.weill@gray-robinson.com
GrayRobinson, P.A.
333 S.E. 2nd Ave., Ste. 3200
Miami, FL 33131
T: 305-416-6880
F: 305-416-6887

*Counsel for Appellant Nautilus Insurance Company*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1220__        Caption: __Nautilus Insurance Company v. Cory Fleming, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Nautilus Insurance Company__
(name of party/amicus)

_____

 who is _____Plaintiff-Appellant_____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                     ☑YES ☐NO
        If yes, identify all parent corporations, including all generations of parent corporations:

        Admiral Insurance Company, which is a wholly owned subsidiary of Berkley Insurance
        Company, which is a wholly owned subsidiary of W.R. Berkley Corporation, a publicly-traded
        company.


3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                        ☐YES ☑NO
        If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
       If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
       If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
       If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/Jaan Rannik                              Date:      March 21, 2025

Counsel for: Nautilus Insurance Company

- 2 -     [Print to PDF for Filing]

ii

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................v

ARGUMENT ....................................................................................................1

I. THE DISTRICT COURT ABUSED ITS DISCRETION IN PROHIBITING DISCOVERY INTO THE PRIOR RELATIONSHIP BETWEEN PALMETTO STATE BANK AND MURDAUGH AND ERRED IN GRANTING SUMMARY JUDGMENT FOR THE BANK AND WESTENDORF .................................................................................................1

   A. The District Court Abused Its Discretion By Blocking Discovery Related to Nautilus' Claims Against the Bank and Westendorf ............................1

   B. The District Court Erred in Granting Summary Judgment for the Bank and Westendorf.................................................................................................5

      1. Conspiracy.......................................................................................5

      2. RICO ................................................................................................6

      3. Negligence........................................................................................6

      4. SCUTPA...........................................................................................9

II. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR MOSS & KUHN ON THE UNJUST ENRICHMENT CLAIM AND DIRECTING A VERDICT FOR MOSS & KUHN ON THE BREACH OF FIDUCIARY DUTY AND NEGLIGENCE CLAIMS ..................................10

   A. The District Court Erred in Granting Summary Judgment for Moss & Kuhn on the Unjust Enrichment Claim Based on Nautilus' Failure to Prove an Expectation of Payment.........................................................................10

   B. There Were Disputed Questions of Material Fact Precluding a Directed Verdict for Moss & Kuhn on the Claim for Breach of Fiduciary Duty ...13

iii

**TABLE OF CONTENTS--CONTINUED**

**Page**

C. There Were Disputed Questions of Material Fact Precluding a Directed Verdict for Moss & Kuhn on the Direct Negligence Claim.......................17

III. THE DISTRICT COURT ERRED IN DENYING NAUTILUS' MOTION FOR DIRECTED VERDICT ON THE VICARIOUS LIABILITY OF MOSS & KUHN FOR THE ACTIONS OF ITS PARTNER CORY FLEMING....20

IV. THE DISTRICT COURT ERRED IN DENYING NAUTILUS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DEFENSE THAT THE SETTLEMENT WAS THE PROXIMATE CAUSE OF NAUTILUS' INJURY RATHER THAN DEFENDANTS' CONDUCT BECAUSE THE SETTLEMENT WAS VOID....................................................................24

CONCLUSION....................................................................................26

CERTIFICATE OF COMPLIANCE....................................................28

iv

## **TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................1, 14

*Ardrey v. UPS*,
   798 F.2d 679 (4th Cir. 1986) .........................................................................1

*Armstrong v. Food Lion, Inc.*,
   639 S.E.2d 50 (S.C. 2006) ...................................................................... 21, 23

*Carroll v. Beard-Laney, Inc.*,
   35 S.E.2d 425 (S.C. 1945) ............................................................................23

*Crittenden v. Thompson-Walker Co.*,
   341 S.E.2d 385 (S.C. Ct. App. 1986) ..........................................................21

*Crystal Ice Co. v. First Colonial Corp.*,
   257 S.E.2d 496 (S.C. 1979) .............................................................................8

*Dimick v. Schiet*,
   293 U.S. 474 (1935) .....................................................................................26

*Doe v. Doe*,
   551 S.E.2d 257 (S.C. 2001) .............................................................................4

*Douglass ex rel. Louthian v. Boyce*,
   542 S.E.2d 715 (S.C. 2001) .............................................................................4

*First Palmetto State Bank & Tr. Co. v. Simkins*,
   372 S.E.2d 592 (S.C. Ct. App. 1988) .............................................................8

*Francis v. MSC Cruises, S.A.*,
   835 Fed. Appx. 512 (11th Cir. 2020) ...........................................................11

*Harrods Ltd. v. Sixty Internet Domain Names*,
   302 F.3d 214 (4th Cir. 2002) ......................................................................1, 2

*Huggins v. Citibank, N.A.*,
   585 S.E.2d 275 (S.C. 2003) .............................................................................7

## TABLE OF AUTHORITIES--CONTINUED

**Cases**                                                                      **Page(s)**

*Madison ex rel. Bryant v. Babcock Ctr., Inc.*,
  638 S.E.2d 650 (S.C. 2006)...................................................................17

*Masanz v. Premier Nissan, LLC*,
  81 So. 3d 169 (La. Ct. App. 2011) ......................................................22

*May v. Peninger*,
  No. 2:07-CV-00864, 2008 WL 509470 (D.S.C. Feb. 22, 2008)..........................9

*McCray v. Md. Dep't of Transp.*,
  741 F.3d 480 (4th Cir. 2014).................................................................2

*Middlebrooks v. Hillcrest Foods, Inc.*,
  256 F.3d 1241 (11th Cir. 2001)...........................................................23

*Midland Mtg. Corp. v. Wells Fargo Bank, N.A.*,
  926 F. Supp. 780 (D.S.C. 2013) ............................................................7

*Midland Mtg. Corp. v. Wells Fargo Bank, N.A.*,
  545 Fed. App'x 194 (4th Cir. 2013) ......................................................7

*Moore v. Weinberg*,
  644 S.E.2d 740 (S.C. Ct. App. 2007) ....................................................5

*Moore v. Weinberg*,
  681 S.E.2d 875 (S.C. 2009) ..................................................................6

*Murphy v. Jefferson Pilot Commc'ns Co.*,
  613 S.E.2d 808 (S.C. Ct. App. 2005) ..................................................23

*Nat'l Fed'n of the Blind v. FTC*,
  420 F.3d 331 (4th Cir. 2005).................................................................10

*Okatie River, L.L.C. v. S.e. Site Prep, L.L.C.*,
  577 S.E.2d 468 (S.C. Ct. App. 2003) ..................................................12

*Oliver v. S.C. Dept. of Highways & Pub. Transp.*,
  422 S.E.2d 128 (S.C. 1992)...................................................................17

# TABLE OF AUTHORITIES--CONTINUED

**Cases**                                                        **Page(s)**

*Penobscot Indian Nation v. Key Bank of Me.*,
   112 F.3d 538 (1st Cir. 1997) ................................................................11

*Rega v. Scottie*,
   No. CV 1:19-0259-CMC, 2023 WL 8800971 (D.S.C. Nov. 9, 2023) .................26

*Rega v. Scottie,*
   No. 23-7246, 2025 WL 800438 (4th Cir. Mar. 13, 2025) ....................................26

*Rickborn v. Liberty Life Ins. Co.*,
   468 S.E.2d 292 (S.C. 1996) ................................................................20

*Shaw v. Foreman*,
   59 F.4th 121 (4th Cir. 2023) ................................................................2

*State ex rel. McLeod v. C & L Corp.*,
   313 S.E.2d 334 (S.C. Ct. App. 1984) ....................................................8

*Trigo v. Moore*,
   No. 92-1516, 1993 WL 192758 (4th Cir. June 7, 1993) ....................................14

*Young v. FDIC*,
   103 F.3d 1180 (4th Cir. 1997) ................................................................22

**Statutes**

S.C. Code § 15-36-100(B) ................................................................19

S.C. Code § 15-36-100(G) ................................................................19

S.C. Code Ann. § 39-5-10(b) ................................................................10

S.C. Code Ann. § 62-1-109 ................................................................4

**Rules**

Fed. R. Civ. P. 26(b)(1) ................................................................5

Fed. R. Civ. P. 56(d) ................................................................2

vii

## TABLE OF AUTHORITIES—CONTINUED

**Other Authorities**                                                  **Page(s)**

RESTATEMENT (SECOND) OF AGENCY § 271 (1958)......................................................8

MERRIAM-WEBSTER DICTIONARY ..............................................................................9

## ARGUMENT

**I.  THE DISTRICT COURT ABUSED ITS DISCRETION IN PROHIBITING DISCOVERY INTO THE PRIOR RELATIONSHIP BETWEEN PALMETTO STATE BANK AND MURDAUGH AND ERRED IN GRANTING SUMMARY JUDGMENT FOR THE BANK AND WESTENDORF**

**A.    The District Court Abused Its Discretion By Blocking Discovery Related to Nautilus' Claims Against the Bank and Westendorf**

Palmetto State Bank (the "Bank") contends that, because the district court allowed Nautilus Insurance Company ("Nautilus") some discovery, its refusal to allow Nautilus additional discovery regarding its allegations against the Bank and Chad Westendorf was not an abuse of discretion.[1]  But the district court's ruling contravened this Circuit's long-standing precept that:  "A district court may not, through discovery restrictions, prevent a plaintiff from pursuing a theory or entire cause of action."  *Ardrey v. UPS*, 798 F.2d 679, 682 (4th Cir. 1986) (*cited in* Doc. 75 at 24); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) ("Generally speaking, 'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986)).

---

[1] Unless indicated otherwise, Nautilus will refer to the Bank and Westendorf collectively as the Bank. Nautilus cites to the parties' briefs as filed in this Court (Docs. 49, 74, 75) and the pagination in the file-stamp headers.

Further, the district court abused its discretion by:

(1) Affording *no* weight to Nautilus' Rule 56(d) affidavit that summary judgment would be premature without the additional discovery, *see* JA1246-JA1247, when it should have been afforded "great weight," *see Harrods*, 302 F.3d at 244;

(2) Disregarding the Rule 56(d) protections that allowed it to defer or deny the dispositive motions, give Nautilus time to take discovery, or issue any other *appropriate* order, *see* Fed. R. Civ. P. 56(d); and

(3) Overlooking that Rule 56(d) relief is "broadly favored and should be liberally granted in order to protect nonmoving parties from premature summary judgment motions." *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 484 (4th Cir. 2014) (internal quotation marks omitted). *See also generally Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) ("[A] district court abuses its discretion by granting summary judgment when it otherwise has 'fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record.'").

The Bank advances additional arguments to justify the district court's ruling, but they have no merit. First, the Bank minimizes Nautilus' need for additional discovery by mischaracterizing Westendorf's and Russel Laffitte's authority within the Bank. *See* Doc. 75 at 11 n.2 (stating that Westendorf was only a "loan officer" and Laffitte was only an "employee"). Westendorf was a Bank **vice president** and

2

his appointment as personal representative relied on that job title, *see* JA1216, JA3517, JA4123; Laffitte was at various times the Bank's **CEO, COO, executive vice president and branch manager**. JA177, JA1179. Accordingly, their actions could be imputed to the Bank.

Second, the Bank endorses the district court's reliance on Murdaugh and Fleming's "admission" that they conspired "without the knowledge or participation of Westendorf" and that there was no evidence that Westendorf knew of the scheme. Doc. 75 at 12, 16, 21, 30-31. But taking their admission as true to block discovery was improper – especially given that Murdaugh and Fleming had major credibility issues and credibility is for the jury's consideration. As to Westendorf, evidence against a co-conspirator is always circumstantial, and there was copious evidence that his blindness, if genuine, was willful. Doc. 49 at 17-18. He not only abdicated his role as personal representative for the Satterfield Estate, but he accepted a $30,000 fee for signing several pieces of paper, attending two meetings, and conversing with Fleming a "few" times during the mediation. That alone is circumstantial evidence of knowledge of the scheme. Nautilus, as the non-movant, was entitled to all reasonable inferences drawn from these facts.

Third, the Bank tries to lay Westendorf's failings as a personal representative at Fleming's doorstep. *See* Doc. 75 at 16. But, under South Carolina law, a personal representative may not delegate the fiduciary duties he owes to the estate to a lawyer

3

representing the fiduciary estate.  *See* S.C. Code Ann. § 62-1-109; *Douglass ex rel. Louthian v. Boyce*, 542 S.E.2d 715, 717-18 (S.C. 2001).  Westendorf was obligated to educate himself about his role and not to blindly trust that Fleming and Murdaugh would take care of everything and protect the interests of *his* client, the Satterfield Estate.  JA4766, JA4786, JA4659, JA4795.  Westendorf's utter abdication of his fiduciary duty—which, wittingly or unwittingly, furthered the conspiracy—was enough for Nautilus' claims to survive summary judgment.

Fourth, the Bank defends the district court's reliance on evidence from the independent criminal proceedings against Russell Laffitte.  *See* Doc. 75 at 17 n.5, 27-28.  But accepting those facts as conclusive against Nautilus in this case was improper because the cases involved different issues, Nautilus was not a party to those proceedings, and Nautilus had no opportunity to cross-examine the witnesses.  *See Doe v. Doe*, 551 S.E.2d 257, 259 (S.C. 2001).

Fifth, the lynchpin of the Bank's position is that there was no connection between the Laffitte-Murdaugh schemes and the scheme to defraud Nautilus.  Doc. 75 at 17 & n.5, 20-21, 31-32.  Nautilus, however, alleged that the scheme to defraud it was part of a decades-long conspiracy between Laffitte and Murdaugh and was entitled to conduct discovery to support its allegations.  *See, e.g.,* JA1350 ¶ 15(m); JA1351 ¶ 15(q); JA1354 ¶¶ 29, 30.  The Bank also ignores that, despite Laffitte's knowledge of and participation in fraudulent activities while serving as a fiduciary

4

in the past *at Murdaugh's request*, he personally approved Westendorf also to serve as a fiduciary *at Murdaugh's request*.

### B. The District Court Erred in Granting Summary Judgment for the Bank and Westendorf

The Bank faults Nautilus for not making a proffer to justify the additional discovery, *see* Doc. 75 at 28, but proffers do not control the scope of discovery. Pleadings determine the scope of discovery, *see* Fed. R. Civ. P. 26(b)(1), and the operative Complaint alleged "what that evidence might be and how it would pertain to the Satterfield settlement years later," *see* Doc. 75 at 28. *See, e.g.,* JA1350 ¶ 15(m); JA1351 ¶ 15(q); JA1354 ¶¶ 29, 30. Each of the claims eliminated on summary judgment is discussed below.

### 1. Conspiracy

The Bank uses the district court's prohibition on additional discovery as a sword to assert that speculation and stacking of inferences cannot create a genuine dispute of material fact. Doc. 75 at 28, 29-31. This underscores, however, the need for the requested discovery: Having been denied discovery into Murdaugh's prior schemes, Nautilus was powerless to demonstrate the similarities or connection between the prior schemes and the Satterfield scheme. Although Nautilus deposed Laffitte, he pled the Fifth Amendment in response to every question, *see* JA3451 n.17, so the bank's records (*e.g.*, communications between Murdaugh and Laffitte) were the only way to obtain this information. *See Moore v. Weinberg*, 644 S.E.2d

740, 750 (S.C. Ct. App. 2007), *aff'd*, 681 S.E.2d 875 (S.C. 2009) ("Because civil conspiracy is 'by its very nature covert and clandestine,' it is usually not provable by direct evidence."). The Bank also baldly asserts that discovery would not have uncovered anything yet determinedly fought to block this very discovery.

The Bank also contends that it "did not guide or control [Westendorf] nor know anything about [the Satterfield claim] other than Russell Laffitte and Charles Lafitte, Jr., telling Westendorf they had no objection to his serving individually in that capacity." Doc. 75 at 30. The past dealings between Laffitte and Murdaugh, however, were highly probative of what Laffitte, and thus the Bank, knew or did not know. The district court abused its discretion by not permitting this discovery.

### 2.    RICO

Nautilus' inability to "link" Murdaugh's "prior conduct to the Satterfield scheme" was inevitable to the district court's prohibition on discovery of conduct before February 2018. *See* Doc. 75 at 31. The district court should not have granted summary judgment for the Bank and Westendorf before Nautilus was allowed to take this discovery.

### 3.    Negligence

The Bank owed a common law duty to Nautilus because it knew or should have known that its conduct would create a substantial risk of injury to Nautilus. *See* Doc. 49 at 45-46 (enumerating the Bank's improper conduct). The Bank did not

need a direct relationship with Nautilus for this duty to arise. *See Midland Mtg. Corp. v. Wells Fargo Bank, N.A.*, 926 F. Supp. 780, 786 (D.S.C.) (stating that duty of care under South Carolina law "embodies the principle that the plaintiff should not be called to suffer a harm to his person or property which is foreseeable and which can be avoided by the defendant's exercise of reasonable care"), *aff'd*, 545 Fed. App'x 194 (4th Cir. 2013).

Moreover, the Bank and Westendorf's duties to Nautilus did not arise out of traditional banking relationships,[2] but out of Westendorf's role as the personal representative of the Satterfield Estate and the Bank's knowing authorization of that fiduciary appointment. The Bank's cases are distinguishable because they involve a bank's liability to third parties for negligently conducting its *banking* duties under the specific circumstances in those cases. *See, e.g., Midland Mtg.*, 926 F. Supp. at 792-93 (mortgage lender alleging that home mortgagors' bank negligently provided lender with an inaccurate or false verification of deposit) [Doc. 75 at 33]; *Huggins v. Citibank, N.A.*, 585 S.E.2d 275, 276-77 (S.C. 2003) (non-bank customer alleging that banks negligently issued credit cards to an unknown imposter) [Doc. 75 at 32]. None involves a bank officer's non-banking role as a personal representative in a personal injury case.

---

[2] Russell Laffitte's relationship with Alex Murdaugh, as a banker or otherwise, can hardly be described as "traditional."

The Bank also ignores that there was record evidence to substantiate Nautilus'

claim against the Bank for negligent *supervision and training* which also does not

depend on a relationship between the Bank and Nautilus. *See* Doc. 49 at 46-47.

Westendorf contends that Fleming's fraud could not be imputed to him

because "the injured third party [Nautilus] ha[d] notice of the fraud." *See* Doc. 75 at

34 (citing *Crystal Ice Co. v. First Colonial Corp.*, 257 S.E.2d 496 (S.C. 1979)). As

a threshold issue, *Crystal Ice* does not apply to these facts; it applies to "*notifications*

given by an agent who is acting adversely to his principal." *See* RESTATEMENT

(SECOND) OF AGENCY § 271 cmt. b (1958) (emphasis added; *cited in Crystal Ice*, 257

S.E.2d at 498); *see also id.*, illus. 1-5. Nautilus "had no connection with the fraud,"

but was an innocent third party. *See Crystal Ice*, 257 S.E.2d at 498; *see also First

Palmetto State Bank & Tr. Co. v. Simkins*, 372 S.E.2d 592, 593, 594 (S.C. Ct. App.

1988) (finding that the "adverse agent exception" did not apply because the defendant

third party "was connected with the alleged fraud" because he "was a party to the

fraud").

Even if *Crystal Ice* applied to these facts, Nautilus did not have "knowledge"

of fraud – it only suspected the fraud but could not prove it. *See Crystal Ice*, 257

S.E.2d at 498. Therefore, the "adverse agent exception" does not apply.

Moreover, Westendorf cannot rely on his willful blindness to the fraudulent

scheme to shield himself from liability. *See State ex rel. McLeod v. C & L Corp.*,

8

313 S.E.2d 334, 339-40 (S.C. Ct. App. 1984) ("Regardless of any subsequent ratification, a principal is liable to third persons for the frauds, deceits, concealments, misrepresentations, negligences and other malfeasances and omissions of duty of his agent acting within the scope of his agency, although the principal did not authorize, participate in, or know of such misconduct.").

### 4. SCUTPA

The Bank argues the district court did not err in granting summary judgment on this claim because: (1) the claim did not involve a "trade" or "commerce" as defined by SCUTPA; and (2) it did not proximately cause Nautilus' damages. Doc. 75 at 21, 34-36.

As to (1), the Bank overlooks that case law and SCUTPA broadly define "trade" and "commerce" as meaning "*any* service." [3] Doc. 49 at 42-43 (emphasis added). Contrary to the "liberal construction" afforded to SCUTPA, *see May v. Peninger*, No. 2:07-CV-00864, 2008 WL 509470, at *9 (D.S.C. Feb. 22, 2008), the Bank narrowly construes SCUTPA to argue that there could be no claim here because it did not "advertise, "offer for sale," or "distribute" *a* service. Doc. 75 at 35.

---

[3] SCUTPA does not define "service," but "service" refers broadly to the act of helping, working for, or providing a benefit to others, typically without producing a physical product. Service Definition, MERRIAM-WEBSTER DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/service.

9

The Bank's construction is flawed for two additional reasons.  The first part of the definition that contains the above-quoted language is not exhaustive; it merely states that "'[t]rade' and 'commerce' *shall include* the advertising, offering for sale, sale or distribution of" a service. S.C. Code Ann. § 39-5-10(b) (emphasis added).  It does not foreclose that other provisioning of "services," such as by authorizing its officer to serve as personal representative, may constitute an unfair trade practice.  *See Nat'l Fed'n of the Blind v. FTC,* 420 F.3d 331, 338 (4th Cir. 2005) (stating that "shall include" is "not exhaustive," and merely indicates that the listed items, "among others," are covered by the relevant provision).

As for (2), the proximate cause argument is addressed below.  *See* Point IV, *infra*.

## II.  THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR MOSS & KUHN ON THE UNJUST ENRICHMENT CLAIM AND DIRECTING A VERDICT FOR MOSS & KUHN ON THE BREACH OF FIDUCIARY DUTY AND NEGLIGENCE CLAIMS

### A.  The District Court Erred in Granting Summary Judgment for Moss & Kuhn on the Unjust Enrichment Claim Based on Nautilus' Failure to Prove an Expectation of Payment

Moss & Kuhn's arguments on this issue have no merit.  First, Moss & Kuhn mischaracterizes Nautilus' position.  Nautilus does not argue that "an expectation of payment" is an element of a quantum meruit claim, *see* Doc. 74 at 16, but, regardless, its claim was for unjust enrichment not quantum meruit, which does not have an "expectation of payment" requirement.  *See* Doc. 49 at 48.  Nautilus also contends

10

that to the extent that quantum meruit now constitutes a cause of action, it does not apply to the payment of settlement monies and no longer has an expectation of payment requirement.[4]  *Id.* at 48-49.

Second, rather than address the district court's error, Moss & Kuhn asserts that Nautilus waived this issue because it did not file a written opposition to Moss & Kuhn's motion for summary judgment on the unjust enrichment claim.  *See* Doc. 74 at 17.  Nautilus, however, did file a response to Moss & Kuhn's motion for summary judgment on the unjust enrichment issue.  *See* ECF No. 206 at 14-16.  More importantly, because the district court's interlocutory ruling was the first appearance of this erroneous position,[5] this issue was preserved for review.  *See Francis v. MSC Cruises, S.A.*, 835 Fed. Appx. 512, 518 (11th Cir. 2020) (finding that a losing party is not required to move for reconsideration of a *sua sponte* summary judgment ruling to preserve its claims on appeal); *Penobscot Indian Nation v. Key Bank of Me.*, 112 F.3d 538, 563 (1st Cir. 1997) (same).

---

[4] Contrary to Moss & Kuhn's position, *see* Doc. 74 at 17, Nautilus' argument is entirely consistent with its argument below.  Nautilus argued that quantum meruit is an *equitable remedy* that does not have expectation of payment as an element.  *See* JA3446-3447.

[5] Defendants did not raise below that they were entitled to summary judgment on the unjust enrichment claim because there was no expectation of payment.  *See* JA2113-JA2114; JA2550-JA2551; JA2038-JA2040; JA1542-JA1543.  Moss & Kuhn and Fleming also did not list "expectation of payment" as an element for unjust enrichment.  JA2039, JA1542.

Third, Moss & Kuhn argues that Nautilus could not prove unjust enrichment because: (1) Nautilus did not confer a "non-gratuitous benefit" on Moss & Kuhn; (2) Moss & Kuhn "never realized any value from any 'benefit' bestowed upon it by Nautilus"; and (3) Moss & Kuhn did not retain the "benefit." Doc. 74 at 19. As discussed below, Moss & Kuhn is wrong. *See generally Okatie River, L.L.C. v. S.e. Site Prep, L.L.C.*, 577 S.E.2d 468, 472 (S.C. Ct. App. 2003) ("[A]n action for money had and received will lie . . . where the defendant received money from the plaintiff for a special purpose and the money has not been applied to the purpose.").

As for (1) and (2), Moss & Kuhn took a $600,055.59 fee out of the $3.8 million settlement, JA4598-JA4599, JA4725, JA4741-4742, JA4948, JA4178, plainly an unjust retention of a benefit in light of (i) Fleming and Murdaugh's fraud and (ii) Moss & Kuhn's acceptance of the settlement monies as escrow agent and improper disbursement in violation of the escrow conditions.

Moss & Kuhn's assertion that the attorneys' fees were paid *by the Satterfield Estate* is a not correct, as the Satterfields never received a penny of Nautilus' funds from which to pay them. *See* JA 4154 (remittance of settlement check to Fleming at his firm's address).

As for (3), there were two independent wrongs here to two different parties, and the remedying of one of the wrongs did not remedy the other wrong. Although Moss & Kuhn disgorged its ill-gotten gains to the Satterfield Estate after suit was

12

filed, it never remedied the damages it caused to Nautilus by improperly disbursing Nautilus' settlement funds in furtherance of a fraudulent scheme.

Fourth, Moss & Kuhn implies that because Nautilus "received [a release] for which it paid the settlement funds" that there was no unjust enrichment. Doc. 74 at 19-20. Nautilus paid the funds to settle its insured's apparent liability, not to enrich its insured and his co-conspirators. It did not receive what it paid for; it was defrauded.

Finally, Moss & Kuhn suggests that Nautilus has unclean hands because it was the "one solely responsible for preventing the filing of the Order." Doc. 74 at 20. As discussed below, *see* Point II.B., *infra*, this is not correct. The facts— whether or not taken in a light most favorable to Nautilus—showed that the non-filing of the order was central to Murdaugh and Fleming's fraudulent scheme.

### B. There Were Disputed Questions of Material Fact Precluding a Directed Verdict for Moss & Kuhn on the Claim for Breach of Fiduciary Duty

Moss & Kuhn argues three points to support the directed verdict: (1) Moss & Kuhn's duties were controlled by the settlement agreement, not the letter enclosing the settlement check; (2) Nautilus did not file the order approving the settlement; and (3) the non-filing of the order was not the proximate cause of any damages suffered by Nautilus. Doc. 74 at 21-23. None of these has merit.

As a threshold issue, because Moss & Kuhn's arguments rely on *disputed* factual issues, and a reasonable jury could have resolved these factual issues for Nautilus, the district court should not have directed a verdict for Moss & Kuhn on this claim. *See Trigo v. Moore,* No. 92-1516, 1993 WL 192758, at \*2 (4th Cir. June 7, 1993); *see also Anderson,* 477 U.S. at 250–51 ("If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed."). Stated another way, the evidence was not "so one-sided that [Moss & Kuhn] must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

As for (1), Moss & Kuhn's *fiduciary* duties were fixed by the Grantland letter to Fleming enclosing the settlement funds, not the settlement agreement. The Grantland letter and the settlement agreement were not contradictory. The letter directed Fleming to "hold the settlement funds ***in trust*** until the Petition and Order Approving Settlement have been signed ***and filed*** at the Probate Court settlement hearing." JA4154 (emphasis added); *see also* JA4704, JA4793, JA3076. The settlement agreement required that "[f]unds will be held in trust until the settlement is approved[6] by a court." JA3835. In both instances, the filing of a signed order approving the settlement was a condition placed *on the disbursement of the funds from Moss & Kuhn's trust account*, not on the delivery of the settlement funds. Fleming accepted this escrow condition when he deposited the funds into the Moss

---

[6] As previously noted, this requires the filing of an order. Doc. 49 at 54.

& Kuhn trust account.  Moss & Kuhn breached its fiduciary duties as an escrow agent by allowing Fleming to disburse the settlement funds before there was a filed order approving the settlement.  Fred Kuhn testified that it was "wrong" to release the settlement funds without a filed order.  *See* Doc. 49 at 54.

As for (2), whether Nautilus was responsible for  filing the order is irrelevant. The funds could not be disbursed until there was filed order.  If Moss & Kuhn wanted to disburse the funds, it had to ensure and/or confirm that the order was filed.

Moreover, Fleming's assertion that Nautilus was to file the order is disputed. According to Fleming, Murdaugh *and* Grantland asked the court not to file the order immediately, and Fleming left court with the signed copy of the order, indicating that he would send the signed order to Grantland for filing after "everything had calmed down."   JA4707-4708, JA4712, JA4736.[7]   Westendorf and Grantland testified that *Fleming* agreed to file the order.  JA4794; JA2993-2994, JA2997, JA3021; JA3070. Fleming allegedly mailed the original order to Grantland, purportedly for filing, but the cover letter is silent on that point, *see* JA3973 ("Enclosed please find the original Order Approving Settlement for the above referenced matter."), and Fleming never contacted Grantland about why he had not

---

[7] Grantland testified at his deposition that he did not attend the approval hearing because he was "set up" into going to the wrong courthouse, *see* JA3021, JA3019, and denied any such discussion.  *See* JA3020-JA3021.

15

filed the original order. JA3081. Most importantly, it was undisputed that Grantland never received the cover letter with the "original" order *until two years later*.[8] JA2995-JA2996; JA3006-JA3007; JA3012. Accordingly, the district court erred in directing a verdict in favor of Moss & Kuhn on this negligence theory.

As for (3), Moss & Kuhn contends that "the fact that the Order Approving Settlement was not filed was not the proximate cause of any damages suffered by Nautilus" because "Murdaugh's fraudulent scheme was not dependent upon the Order being filed." Doc. 74 at 23. Nautilus disagrees: Murdaugh's fraudulent scheme was dependent on the approval order *not* being filed. For the co-conspirators, Murdaugh, Fleming, and Westendorf, to effectuate their fraud, it was imperative that the Satterfields not learn of the settlement. The non-filing of the order was central their scheme, and Fleming ensured that it was not filed. Nautilus' damages also flowed directly from Moss & Kuhn's breach of the escrow condition because it allowed Fleming to divert the settlement monies to Murdaugh and himself.

Moreover, "[t]he question of proximate cause ordinarily is one of fact for the jury" and "[t]he trial judge's sole function regarding the issue is to inquire whether particular conclusions are the only reasonable inferences that can be drawn from the

---

[8] Even assuming that Grantland received this letter shortly after it was mailed, he believed that the "original" was a conformed copy that the clerk stamped when the order was filed. JA3071.

evidence." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 638 S.E.2d 650, 662 (S.C. 2006). "Only when the evidence is susceptible to only one inference does it become a matter of law for the court." *Oliver v. S.C. Dept. of Highways & Pub. Transp.*, 422 S.E.2d 128, 131 (S.C. 1992). Accordingly, this issue should have gone to the jury.

Further, Moss & Kuhn's breach "d[id] not have to be the sole proximate cause of [Nautilus'] injury; instead, [Nautilus] only had to prove [Moss & Kuhn's] [breach] "was at least one of the proximate causes of the injury" *Madison*, 638 S.E.2d at 662.

### C.    There Were Disputed Questions of Material Fact Precluding a Directed Verdict for Moss & Kuhn on the Direct Negligence Claim

Nautilus advanced three negligence theories against Moss & Kuhn: **(1)** by accepting the settlement funds into its trust account, it assumed a duty as an escrow agent to follow the condition on the escrow funds, **(2)** it negligently supervised Fleming and **(3)** it negligently monitored its trust account by allowing Fleming to fabricate expenses and divert the settlement funds from the account to Murdaugh. Doc. 49 at 56 (citing JA1365-1367). The district court granted a directed verdict to Moss & Kuhn on these theories based on its finding that Moss & Kuhn owed no duty to Nautilus. JA4962-JA4968.

Moss & Kuhn contends that it was entitled to a directed verdict on theory (1) because it "fully complied with the terms of the settlement agreement by holding the settlement funds in trust until the settlement was approved by a Court." Doc. 74 at

17

24.  But the settlement agreement did not fix Moss & Kuhn's duties as an escrow agent; Grantland's letter remitting the funds did.  That letter directed Fleming to "hold the settlement funds *in trust* until the Petition and Order Approving Settlement have been signed *and filed* at the Probate Court settlement hearing."  JA4154 (emphasis added); *see also* JA4704, JA4793, JA3076.  Moss & Kuhn breached its duties as an escrow agent by allowing Fleming to disburse the settlement funds before there was a filed order approving the settlement.  Moreover, the order approving the settlement was not effective until it was filed.  *See* Doc. 49 at 54.

Moss & Kuhn's assertion that Nautilus failed to file the order approving the settlement is not accurate; this fact was disputed at trial, and the district court was required to construe the evidence in the light most favorable to Nautilus.  *See* Point II.B, *supra*.

On theory (2), Moss & Kuhn asserts that there was "zero evidence" it negligently supervised Fleming, and Nautilus did not meet its burden of proof because it did not present expert testimony on this "essentially" professional negligence claim.  Doc. 74 at 24.  Neither of these arguments has merit.

There was copious evidence that Moss & Kuhn negligently supervised Fleming by:

• Allowing Fleming to disburse the settlement funds to *Murdaugh*, the *opposing* party, without a filed order approving the settlement;

18

• Allowing Fleming to make payments to himself totaling $26,200 that he falsely identified as expenses, JA4595-4596, JA4598-4599, JA4177-4178;

• Allowing Fleming to retain $150,000 in fabricated prosecution expenses in his trust account for his and Murdaugh's personal benefit, JA4603;

• Overlooking that the returned checks were endorsed by Murdaugh *dba Forge*, JA4958; and

• Not questioning the balance of $113,800 that remained in the trust account after disbursements, JA4742-4743, JA4178.

As found by the district court, Moss & Kuhn allowed Fleming to "loot[ ] from a client of the firm . . . out of the [firm's] escrow account." JA4920, JA4921.

On the second point, this was not a professional negligence claim or legal malpractice claim, so expert testimony was not required. *See* S.C. Code § 15-36-100(B) (requiring an expert affidavit to be filed with a complaint alleging *professional* negligence); *see also id.* § 15-36-100(G) (omitting escrow agents from professions requiring expert affidavit);[9] JA1365 ¶ 117 – JA1367 ¶ 133 (alleging a simple negligence claim based on Moss & Kuhn's duties as an escrow agent which are "distinct from duties that arise out of an attorney/client relationship"). Moss & Kuhn's breach of its duty and Nautilus' resulting damages did not involve complex

---

[9] Moss & Kuhn did not move to dismiss or move for summary judgment on this claim based on the absence of expert testimony. *See* JA1445-JA1455; JA1544.

19

professional standards where expert testimony would be needed to establish the standard of care. Moss & Kuhn cites no legal authority to support its position.

On theory (3), Moss & Kuhn again posits without legal support that the district court did not err because Nautilus did not present expert testimony. Again, this was not a professional negligence claim, but a simple negligence claim, so expert testimony was not required.

Moss & Kuhn also claims that these negligence theories failed because the non-filing of the order approving the settlement was not the proximate cause of Nautilus' damages. Doc. 74 at 26. This has no merit. *See* Point IV, *infra*.

## III. THE DISTRICT COURT ERRED IN DENYING NAUTILUS' MOTION FOR DIRECTED VERDICT ON THE VICARIOUS LIABILITY OF MOSS & KUHN FOR THE ACTIONS OF ITS PARTNER CORY FLEMING

Moss & Kuhn contends that it could not be vicariously liable for Fleming's actions because "Fleming's theft of the insurance proceeds was not necessary to accomplish the purpose of his employment" and "did not further the business of Moss & Kuhn." *See* Doc. 74 at 27. Nautilus disagrees.

Under Moss & Kuhn's reasoning, a principal could never be liable for the intentional torts of its employees. This is not South Carolina law. *See Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 298 (S.C. 1996). As quoted by Moss & Kuhn, the critical inquiry is whether Fleming acted with "some independent purpose of his own and *not with reference to the service in which he is employed*" or whether

20

Fleming "step[ped] aside from [Moss & Kuhn's] business for some purpose wholly disconnected with his employment." *See* Doc. 74 at 28 (quoting *Armstrong v. Food Lion, Inc.*, 639 S.E.2d 50, 53 (S.C. 2006); emphasis added).  Fleming's misconduct occurred as a partner for Moss & Kuhn.  He never took off his "lawyer-hat" but instead manipulated the legal process as a Moss & Kuhn partner and used the Moss & Kuhn apparatus to coerce Nautilus into paying a fraudulent claim.  *Cf. Armstrong*, 639 S.E.2d at 53 (affirming directed verdict for supermarket on it vicarious liability for two stocking employees who attacked customer because the attack was unrelated to employees' employment and they were "not furthering their employer's business in any manner").

To wit, he used Moss & Kuhn's trust account, its letterhead, filed documents with Moss & Kuhn in the signature block, and used his office, work phone, work email, and Moss & Kuhn office-staff in furtherance of the fraud against Nautilus.  *See also* Doc. 49 at 60 (enumerating additional undisputed facts).  Moreover, Fleming's relationship with Nautilus arose solely from his position as a Moss & Kuhn partner.  *See Crittenden v. Thompson-Walker Co.*, 341 S.E.2d 385, 388 (S.C. Ct. App. 1986).  In short, Fleming was acting "with reference to the service in which he [was] employed" – *i.e.*, as an attorney for the Satterfield Estate – and did not "step aside from [Moss & Kuhn's] business" "for some purpose *wholly disconnected with his employment.*"

21

Moss & Kuhn disregards that Fleming's actions were not "done only to further his . . . own interest" or "to benefit his own independent purpose of defrauding Nautilus." *See* Doc. 74 at 29, 30. Moss & Kuhn earned a substantial six-figure fee from the settlement that was used to pay firm expenses, among other things. JA4598-4599, JA4725, JA4741-4742, JA4948, JA4178, JA4956, JA4909-4910, JA4957. In *Young v. FDIC*, 103 F.3d 1180 (4th Cir. 1997) [*cited at* Doc. 74 at 28], unlike this case, "no evidence suggest[ed] that [the bank employee] acted with the purpose of benefiting [the bank] even incidentally." *See id.* at 1190. Fleming's actions also benefited Murdaugh, who stole the lion's share of the settlement monies.

Citing to a non-binding Louisiana state court decision, Moss & Kuhn argues that "scope of employment hinges on the *predominant motive* of the tortfeasing employee." Doc. 74 at 29 (citing *Masanz v. Premier Nissan, LLC,* 81 So. 3d 169, 175 (La. Ct. App. 2011); emphasis added). This is not the test in South Carolina, and the South Carolina Supreme Court has cited with approval the RESTATEMENT OF THE LAW OF AGENCY which rejects this rule: "The fact that the predominant motive of the servant is to benefit himself or a third person *does not* prevent the act from being within the scope of employment. *If the purpose of serving the master's business actuates the servant to any appreciable extent*, the master is subject to liability if the act otherwise is within the service . . . ." *Carroll v. Beard-Laney, Inc.*, 35 S.E.2d 425, 428-29 (S.C. 1945) (emphasis added).

22

Citing to non-binding cases from Arkansas, Kentucky, and New York, Moss & Kuhn also argues that because Fleming acted "based on strictly personal motives," he was not within the scope of his employment. Doc. 74 at 29. This narrow standard is not South Carolina law. The question under South Carolina law is whether Fleming stepped aside from Moss & Kuhn's business for some purpose wholly disconnected with his employment. *See Armstrong*, 639 S.E.2d at 53. He did not.

Moss & Kuhn correctly notes that the scope of employment issue is ordinarily a question of fact, *see* Doc. 74 at 30 (citing *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1246 (11th Cir. 2001), but omits that in *Middlebrooks*, the circuit court also stated that "in plain and indisputable cases, the court may decide the issue as a matter of law." *Id.*; *accord Murphy v. Jefferson Pilot Commc'ns Co.*, 613 S.E.2d 808, 813 (S.C. Ct. App. 2005). This was one of those cases.

The fact that "Nautilus knew, or at least should have known, about the fraud," Doc. 74 at 30, is irrelevant to Moss & Kuhn's vicarious liability for Fleming. Even if it were relevant, as discussed in more detail below, suspecting Murdaugh and Fleming's fraud and proving it were two different things. Nautilus had no evidence to refute Murdaugh's concocted story which was corroborated by two witnesses.

23

**IV.    THE DISTRICT COURT ERRED IN DENYING NAUTILUS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
DEFENSE THAT THE SETTLEMENT WAS THE PROXIMATE
CAUSE OF NAUTILUS' INJURY RATHER THAN DEFENDANTS'
CONDUCT BECAUSE THE SETTLEMENT WAS VOID**

Defendants asserted as a defense that Nautilus' decision to settle was the
proximate cause of its harm, not their own fraudulent conduct.  DE 157 at 7 ¶ 38;
JA1440 ¶¶ 31, 32; JA1453 ¶ 50; JA1464 ¶¶ 67, 68.[10]  The district court denied
Nautilus' motion for summary judgment on this issue, JA1574-JA1604, based on
the *Rooker-Feldman* abstention doctrine – a ruling which Defendants do not defend
on appeal and which was not asserted by them below.

Nautilus was *not* the proximate cause of its own harm, as Defendants agree.
*See* Doc. 74 at 32 ("Nautilus' injuries were not the proximate result of some alleged
defect in the settlement, but rather were the proximate result of the fact that the entire
lawsuit[11] was fraudulent."); *id.* ("The conduct of Fleming and Murdaugh was the
proximate cause of Nautilus' injury, and that conduct included fraudulently inducing
Nautilus to pay money to settle the claim."); Doc 75 at 10 ("[T]he fundamental
misdeed at the center of this case" was that Fleming and Murdaugh "surreptitiously
agreed to steal proceeds paid by Nautilus . . . to settle a wrongful death claim . . . .").

---

[10] The Bank argues this issue in its statement of the case.  *See* Doc. 75 at 12-
16; *see also id.* at 34.

[11] Nautilus settled before any lawsuit was filed, so this is not accurate.

24

Although Nautilus recognized the claim as suspicious, and "possibly fraudulent," *see* Doc. 75 at 12, it could not prove it, and two witnesses corroborated Murdaugh's version of the accident.  Nautilus was therefore given a Hobson's choice:  pay a dubious claim it could not prove was fraudulent or refuse to pay and be sued for bad faith.  It chose to fulfill its duties as an insurer to protect the financial and reputational interests of its insured and settle the claim.

More importantly, because the order approving the settlement was never filed, the settlement was never consummated and was a nullity.  Hence, Nautilus' decision to settle could not have been the proximate cause of its damages as a matter of law.  Also, as discussed above, Nautilus was not responsible for the non-filing of the order.  *See* Doc. 49 at 62.  Rather, the non-filing of the order was an integral part of Murdaugh and Fleming's fraudulent scheme.  The Bank admitted in deposition that the scheme would not have succeeded if the Satterfields learned of the settlement.  JA1233-JA1234.  Westendorf's service as a so-called personal representative *for the Satterfield Estate* ensured that the Satterfields did not learn of the settlement.

Moss & Kuhn contends that the jury's award of less than the settlement amount is not harmful error because "[t]here is no rational relationship between the amount of the damages suffered by Nautilus and the status of the settlement Order as filed or unfiled."  Doc. 74 at 32-33.  Moss & Kuhn misses the point.  Because of the summary judgment ruling, Defendants were allowed to argue extensively to the

25

jury that Nautilus was responsible for its own injury. *See* JA4992-JA4995, JA4998-4999 (Fleming closing argument); JA5003-JA5004, JA5007-JA5010 (Moss & Kuhn closing argument). The jury, in turn, awarded less than Nautilus' total damages to account for Nautilus' "fault."

Finally, Moss & Kuhn suggests that Nautilus could have moved for an additur if the verdict was inadequate. Doc. 74 at 33. The Seventh Amendment's re-examination clause prohibits additur in federal court. *See Dimick v. Schiet*, 293 U.S. 474, 476-479 (1935); *accord Rega v. Scottie,* No. CV 1:19-0259-CMC, 2023 WL 8800971, at *3 (D.S.C. Nov. 9, 2023), *aff'd*, No. 23-7246, 2025 WL 800438 (4th Cir. Mar. 13, 2025). Even if additur were viable, it would not have been proper in light of the district court's previous denial of Nautilus' motion for partial summary judgment on this issue.

## <u>CONCLUSION</u>

Based on the foregoing, this Court should: (1) reverse the summary judgment for the Bank and Westendorf and remand for discovery into the Bank's prior acts; (2) remand for entry of judgment for Nautilus on its vicarious claims against Moss & Kuhn; (3) remand for a new trial against Moss & Kuhn on the unjust enrichment, breach of fiduciary duty, and negligence claims; and (4) remand for partial summary judgment for Nautilus finding that the settlement was not the proximate cause of its injury.

Respectfully submitted:

/s/ Jack R. Reiter
Jack R. Reiter, FBN 0028304
jack.reiter@gray-robinson.com
Robert C. Weill, FBN 0009962
robert.weill@gray-robinson.com
333 S.E. 2nd Ave., Ste. 3200
Miami, FL 33131
Tel.: (305) 416-6880;
Fax: (305) 416-6887

- and -

Jaan G. Rannik, D.S.C. Bar No. 12621
jrannik@cohenkinne.com
Cohen Kinne Valicenti & Cook LLP
66 W. St., Ste. 201
Pittsfield, MA 01201
Tel.: (413) 443-9399
Fax: (413) 553-0335

*Counsel for Appellant Nautilus Insurance Company*

27

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.      This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):  This brief contains 6,346 words.

2.      This brief complies with the typeface requirements because:  This brief has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Times New Roman.

/s/ Jack R. Reiter

Party Name:  Appellant Nautilus Insurance Company

Date: April 1, 2026